UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PROVIDENCE PIERS, LLC, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 12-532S |
| | : | |
| SMM NEW ENGLAND, INC., | : | |
| Defendant. | : | |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

The motion before the Court seeks enforcement of a sanction award imposed in Providence Piers, LLC v. SMM New England, Inc., No. CA 12-532 S, 2014 WL 5775663, at *5 (D.R.I. Nov. 6, 2014) ("Providence Piers"). On November 6, 2014, this Court found that the failure of Plaintiff Providence Piers, LLC ("Providence Piers") to make a timely Rule 26(a)(2)(B)-compliant expert disclosure with respect to its designated engineering expert, George J. Geisser ("Geisser"), was neither substantially justified nor harmless; finding preclusion of Geisser to be overly harsh, the Court denied the motion of Defendant SMM New England, Inc., ("SMM") to strike, set a deadline for Providence Piers to supplement and ordered Providence Piers to pay, "as a sanction, SMM's reasonable attorneys' fees and costs that are occasioned by supplementation." Id. The Court specified that SMM should be allowed "a reasonable amount of time to determine whether supplemental rebuttal reports are needed." Id. The reimbursable fees and costs covered by the sanction include "review of the supplemental report, the preparation of supplemental rebuttal reports, and the deposition of Geisser." Id. at *6.

Since Providence Piers issued, Geisser's initial submission was timely supplemented on December 5, 2014 ("Geisser Report"), SMM's counsel and experts reviewed the Geisser Report, two supplemental rebuttal reports were prepared and submitted by SMM's experts on February

18 and 20, 2015, and, on March 11, 2015, SMM made demand on Providence Piers for payment of the fees and costs occasioned by that work; in all, SMM seeks sanctions in the total amount of $21,681.50. This demand for payment does not include any fees associated with the Geisser deposition because it has not yet occurred.

Providence Piers's initial reaction to the demand for payment was flippant – one of its attorneys suggested that SMM should "Buy lottery tickets," while the other tersely responded with "OMG,[1] thanks, I needed a laugh." However, they quickly righted the ship and confirmed that Providence Piers intends to comply with the Court's order by paying reasonable costs in accordance with it. ECF No. 118-5 at 3. Nevertheless, despite a follow-up-request made on May 5, 2015, neither payment nor a commitment to pay by a date certain has been forthcoming; accordingly, SMM filed its Motion to Enforce Order against Plaintiff (ECF No. 117).

The motion asks this Court to assess the reasonableness of the fees and costs occasioned by the supplementation so far and to enter an order mandating payment, notwithstanding the possibility that there might be a further request for additional fees and costs after the Geisser deposition. Further, while conceding that Providence Piers did not expressly make the use of Geisser as an expert contingent on payment of the sanction, SMM requests that the Court's order provide that Geisser will be stricken as an expert witness if payment is not remitted within fourteen days of the Court's decision.

In its opposition to the motion, Providence Piers does not dispute its obligation to comply with the order to pay reasonable fees and costs as a sanction. Instead, it launches a detailed

---

[1] "OMG" is the acronym for "Oh my God" used to express shock or amazement in electronic messages, such as emails, text messages, and Tweets. Judge Herbert B. Dixon, Jr., Texting, Tweeting, and Other Internet Abbreviations, 50 No. 4 Judges' J. 30, 32 (2011); see Oxford English Dictionary (online ed.), http://www.oed.com/viewdictionaryentry/Entry/293068 (tracing the abbreviation OMG back to a 1917 letter) (last visited June 23, 2015); Mary Sue Backus, OMG! Missing the Teachable Moment and Undermining the Future of the First Amendment—TISNF!, 60 Case W. Res. L. Rev. 153, n.a1 (2009).

assault on the reasonableness of the cost of work done by SMM's rebuttal experts, arguing that their reports are untimely, non-compliant with Fed R. Civ. P. 26, and little more than regurgitations of work done in 2014; it caps the litany of defects with its own motion to strike both of them. With respect to SMM's attorneys' fees, it accepts the reasonableness of the hourly rate, but little else. It nit-picks the time entries, pointing out some that reflect work duplicated by more than one attorney and others that do not seem to be anchored in other work done on this project. With respect to the timing of payment of whatever sanction may be imposed, Providence Piers asks the Court to order that the sanction will become due at the termination of the case, so that it will be incorporated into the parties' obligations to each other at that time.

The motion to enforce has been referred to me pursuant to 28 U.S.C § 636(b)(1)(A); I am addressing it in a report and recommendation because the outcome has potential case-ending consequences for Providence Piers. Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 6 (1st Cir. 1999) (whether sanctions motion is to be determined by magistrate judge or to be addressed by report and recommendation depends on whether it seeks a sanction that fully disposes of a claim or defense); Cleversafe, Inc. v. Amplidata, Inc., 287 F.R.D. 424, 425-31 (N.D. Ill. 2012) (circuit-by-circuit analysis of when magistrate judge may determine sanctions motion).

I. BACKGROUND

SMM's motion to enforce is focused on two of the three categories of fees and costs included within the sanction imposed by Providence Piers: review of the supplemental report and the preparation of supplemental rebuttal reports. It seeks recovery for the time invested by its legal team and by its two previously disclosed experts, structural engineer James McLoughlin P.E. of Halliwell Engineering Associates ("McLoughlin") and geotechnical engineer Paul B. Aldinger, Ph.D., P.E. of Douglas G. Peterson & Associates, Inc. ("Aldinger"). When asked at

3

argument why it is seeking payment of the sanction now, when the full amount is not yet known because Geisser has not yet been deposed, SMM gave two reasons. First, it advised the Court that it is unlikely to seek a further sanction for the work associated with the Geisser deposition because its scope may well go beyond the Geisser Report, making identification of time spent on work "occasioned by supplementation" difficult if not impossible; SMM represented that it is disinclined to seek a further sanction, although it is not yet prepared to waive its right to do so. Second, SMM pointed out that, if its motion is granted and Providence Piers is unable to pay the sanction in two weeks, the Geisser Report will be stricken and a deposition to ask him about it will be unnecessary.

    A.    **<u>Cost of McLoughlin Rebuttal Report</u>**

McLoughlin is the structural engineer who was timely disclosed by SMM in the expert disclosures it made in June 2014. McLoughlin's initial report was dated June 16, 2014, and comprises forty pages of analysis, photographs, maps and data ("McLoughlin Report I"). By contrast, his seven page rebuttal report, signed on February 20, 2015 ("McLoughlin Report II"), is laser-focused on the Geisser Report. McLoughlin states that he reviewed the Geisser Report and prepared an opinion as to the engineering conclusions, methodologies and opinions in it, as well as the material referred to in it, such as the Exponent Report.[2] ECF No. 119-3 at 2-8. Focusing on two broad topics, the "Construction and Settlement of the Newly Constructed Stair Tower" and the "Damage to Certain One-Story Buildings Based on Crack Gauge Monitoring," McLoughlin Report II walks through his summary of Geisser's comments on these topics and

---

[2] At the risk of frustrating the neophyte to this case, I will not lay out the convoluted history of the Exponent Report. Curious readers may consult <u>Providence Piers</u>, 2014 WL 5775663, at *5 n.1, and ECF No. 76 (ordering Providence Piers's insurer to produce Exponent Report among other documents). For present purposes what matters is that the Exponent Report is a lengthy and detailed engineering study of the issues pertinent to this case, which was adopted in part by the Geisser Report, so that a thorough analysis of the Exponent Report is a reasonable and necessary exercise for an engineer preparing a rebuttal to the Geisser Report.

provides detailed enumerated responses to each; at various points, McLoughlin Report II refers back to portions of his analysis of specified issues in McLoughlin Report I.

McLoughlin's invoice covers only his own time at the hourly rate of $185, the reasonableness of which is not disputed. ECF No. 118-2 at 7-8. He billed two and a half hours to perform an initial examination of the Geisser Report and to confer with the attorneys; eight hours for review of both the Report and its extensive attachments (265 pages of material, including the Exponent Report); and an additional ten hours for procuring all of the documents referenced in it, performing a close analysis of the attachments, reports, boring logs, aerial photographs, construction documents and geotechnical claims, and preparing a summary for counsel. The balance of his time was spent developing comments, evaluating Geisser's assertions, reviewing vibratory data and preparing the rebuttal report, in all nineteen more hours. His total invoice is for $7,307.50, covering a total of thirty-nine and a half hours of work. At argument, SMM represented that this invoice reflects the actual amount expended by SMM on the cost of this rebuttal report in that the invoice was paid as presented.

Providence Piers fires a blunderbuss at McLoughlin Report II. First, it presents a declaration from Geisser ("Geisser Declaration"), who avers that he has studied McLoughlin Report II, points out each instance where McLoughlin Report II restates an opinion from McLoughlin Report I and criticizes several of McLoughlin Report II's conclusions for the lack of the facts and data considered in forming them. ECF No. 119-1 at 2-7. Based on his conclusion that much of McLoughlin Report II is a mere restatement of McLoughlin Report I, and based on the lack of facts or data to support several of the conclusions, Geisser opines that the McLoughlin Report II should have taken no more than ten to fifteen hours to complete. At

McLoughlin's unchallenged rate of $185, Geisser's opinion permits the inference that a reasonable charge for McLoughlin Report II is at least somewhere between $1,850 and $2,775.

Providence Piers also contends that the timing and content of McLoughlin Report II fails to comply with the Rules of Civil Procedure. By the time the Geisser Report was prepared on December 5, 2014, all applicable pretrial deadlines set by the Court had expired and there was no deadline applicable to the rebuttal reports beyond the statement in Providence Piers, 2014 WL 5775663, at *5, that "if Plaintiff is permitted to supplement the Geisser Report, expert discovery will need to be reopened to allow SMM a reasonable amount of time to determine whether supplemental rebuttal reports are needed." Providence Piers argues that, with no scheduling order in place, the default deadline of thirty days for rebuttal reports in Fed. R. Civ. P. 26(a)(2)(D)(ii) must apply, making these rebuttal reports due on January 7, 2015. Since McLoughlin Report II was not completed until February 20, 2015, Providence Piers contends that it is untimely and should be stricken.[3] Similarly, focused on the opinion in the Geisser Declaration that portions of McLoughlin Report II lack the facts and data considered in forming the opinion, Providence Piers argues that the rebuttal fails to comply with Fed. R. Civ. P. 26(a)(2)(B)(ii) and should be stricken in its entirety. With the report stricken, it contends it should pay nothing for the work.

B.  **Cost of Aldinger Rebuttal Report**

Aldinger is SMM's geotechnical engineering expert. He submitted his first report ("Aldinger Report I") on August 22, 2014; it is a twenty-page single-spaced analysis, with twenty pages of attachments, including maps, photographs, test boring logs and his curriculum

---

[3] This argument about timing was newly marshaled at the hearing. There is no suggestion that Providence Piers raised it as it waited for SMM's rebuttal reports or that it complained about the timing before or after they were provided. Further, this argument is not mentioned in Providence Piers's extensive written opposition to the motion to enforce.

vitae. The Aldinger rebuttal report, dated February 18, 2015,[4] ("Aldinger Report II") is eight single-spaced pages that "specifically address the Geisser Engineering Corp. Report." ECF No. 119-5. It focuses on the foundations of the tower and building, the nature of the stratum into which the foundation is anchored, the presence of groundwater and the effect of vibrations; ten pages of vibration records are attached. ECF Nos. 119-5, 119-6.

Aldinger, assisted by an individual providing technical support, spent a total of forty-six hours on the rebuttal report.[5] Aldinger performed most of the work; his time was billed at $200 per hour, while the technical support biller was charged at $50 per hour; Providence Piers does not quibble with these rates. Aldinger spent fourteen and a half hours performing analysis, thirteen and a half hours writing and revising his report, ten hours researching technical issues and two and a half hours on telephone calls or engaged in other correspondence about the matter. In all, Aldinger worked for forty and a half hours (total billings of $8,100) while his technical support assistant invested five and a half ($275 total), for a total of forty-six hours in all. The total billed for that work is $8,375.[6] SMM represents that it has accepted this invoice and that it has been paid as presented.

Like the critique of the McLoughlin Report II, the Geisser Declaration attacks the reasonableness of the time spent on the Aldinger Report II. ECF No. 119-1 at 7-8. The primary criticism is that Aldinger, although clearly focused on the Geisser Report, nevertheless marshaled at least some of the same opinions that he laid out in Aldinger Report I. The Geisser Declaration also points out two specific sentences and four discrete "discussions" that Geisser

---

[4] The report is literally dated February 18, 2014. It is clear that this is a typographical error. ECF No. 119-5.

[5] The Aldinger invoice lists forty-eight hours – it includes a $280/two hour charge for another analyst on February 17, 2014. Although not challenged by Providence Piers, this entry appears to be unrelated based on the date. When this entry is subtracted, the Aldinger invoice charges for a total of forty-six hours at a cost of $8,375.

[6] See n.5 *supra*.

7

opines should have been supported by facts, data or references to engineering literature, but are not. Based on these deficits, Geisser opines that the Aldinger Report II should have taken between no more than twenty-five and twenty-eight hours to complete. Because neither the Geisser Declaration nor Providence Piers quarrels with the hourly rates for the two individuals who worked on the report, and focusing only on the time spent by Aldinger, who has the higher billing rate ($200 per hour), Geisser's Declaration permits the inference that he does not quibble with the technical support and considers a reasonable charge for Aldinger Report II to be between $5,275 and $5,875 ($5,000 to $5,600 for Aldinger, plus $275 for technical support).

Providence Piers levels arguments similar to those aimed at McLoughlin Report II in support of its attempt to avoid paying for the Aldinger Report II. It seeks to persuade the Court that Aldinger Report II fails to comply with Fed. R. Civ. P. 26(a)(2)(B)(ii) and (a)(2)(D)(ii), based on the lack of facts and data and the timing of the completion of this rebuttal report. Based on these arguments, it asks the Court to strike Aldinger Report II and argues that, when the report is stricken, it should not have to pay anything for the work to prepare it.

**C.** **Attorneys' Fees**

SMM asks the Court to award attorneys' fees for the work occasioned by the supplementation, a total of 27.6 hours, for a total charge of $5,719.[7] Although the case law is clear that it could, SMM does not seek to recover based on the hourly rate that is customary for attorneys of the experience and expertise of those engaged for this case, but rather based on the far lower flat hourly rate ($215) that its insurer negotiated and has paid for these services. Providence Piers does not dispute the reasonableness of this below-market rate. SMM represents

---

[7] SMM points out that it omitted one hour from its fee calculation (27.6 hours times $215 equals $5,934, not $5,719). Since this error redounds to the benefit of Providence Piers, I use the lower number, which is the amount SMM claimed in its pre-motion demand, and not the higher correct amount.

that it has already culled the time entries to remove any time that could fairly be considered unrelated or duplicative.

The invoice for attorneys' fees is supported by a declaration of one of the attorneys on the team who avers that the services were actually performed for SMM's response to the Geisser Report. In all, SMM seeks to recover for the work of three attorneys, all at the same flat rate, for services over a period beginning on December 8, 2015, shortly after the Geisser Report was submitted, through February 19, 2015, the day before the second rebuttal report was signed. The time entries are clear and, with a single exception, describe work directly related to the review of the Geisser Report, conferring with the rebuttal experts and reviewing and commenting on drafts of their reports. The only entry that is not clearly linked is for a half hour spent on "Review Con. Warf. Plans as produced by Plaintiff." ECF No. 118-2 at 14.

Providence Piers's substantive attack on the reasonableness of the attorneys' fees focuses on instances where more than one attorney performed the same task – for example, all three members of the team billed an hour (or less) for reviewing the Geisser Report on the day it was received and two members of the team billed for reviewing the McLoughlin draft (though one of them spent only an hour). Providence Piers also complains about several time entries based on the absence of expected related entries – for example, it challenges an entry for attending a meeting when no other time keepers charged for the same meeting. In addition, Providence Piers relies on its motion to strike McLoughlin and Aldinger Reports II and contends that none of the attorneys' fees are reasonable because the rebuttal reports to which they relate do not comply with Fed. R. Civ. P. 26(a)(2)'s requirements as to timing and the inclusion of facts and data considered.

## II. APPLICABLE LAW

In calculating the amount of a sanction imposed pursuant to Fed. R. Civ. P. 37(c)(1), the court has broad discretion to determine the reasonable fees and costs to be awarded. Ins. Recovery Grp., Inc. v. Connolly, No. CIV.A. 11-10935-WGY, 2015 WL 1373372, at *4 (D. Mass. Mar. 26, 2015); McDonough v. City of Quincy, 353 F. Supp. 2d 179, 183 (D. Mass. 2005). To determine the award, this Court relies on the lodestar method. See Spruill v. Alexander, CA No. 09-292S, 2011 WL 2413837, at *3 (D.R.I. Mar. 31, 2011). Under this approach, "the number of hours reasonably expended on the litigation" is multiplied by "a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). The party seeking an award of reasonable fees and costs has the burden of producing documentation to support the request. Hutchinson ex rel. Julien v. Patrick, 636 F.3d 1, 13 (1st Cir. 2011); Norkunas v. HPT Cambridge, LLC, 969 F. Supp. 2d 184, 195 (D. Mass. 2013).

Reasonable hours are determined by reviewing the documentation submitted and "subtract[ing] duplicative, unproductive, or excessive hours," Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001), while reasonable rates are determined by reference to prevailing community rates. Spruill, 2011 WL 2413837, at *3. In addition, the court may rely on its own experience to estimate the amount of time reasonably required for the work claimed. Nydam v. Lennerton, 948 F.2d 808, 812-13 (1st Cir. 1991); Sherwood Brands of R.I., Inc. v. Smith Enters., Inc., No. CIV.A. 00-287T, 2002 WL 32157515, at *2 (D.R.I. Sept. 5, 2002). Thus, while an adversary should not be forced to pay for unnecessary and excessive duplication, courts recognize that some coordination of effort is a common and frequently necessary practice for attorneys working together on a case and is reasonable as long as the total amount of such time is not excessive. See Ins. Recovery Grp., Inc., 2015 WL 1373372, at *7

(ten hours of attorneys conferencing among themselves not unreasonable); Aevoe Corp. v. Shenzhen Membrane Precise Electron Ltd., No. 2:12-cv-00054-GMN-PAL, 2012 WL 2244262, at *10 (D. Nev. June 15, 2012) (when law firm has multiple attorneys assigned to case, sanctions should be limited to include some, but not all, of time spent by three reviewing same material).

### III. ANALYSIS

The first issues to be set to one side are the dueling motions to strike each other's expert report. SMM asks the Court to make the sanction due almost immediately and to strike the Geisser Report if it is not promptly paid. With Providence Piers's protestations of financial distress already splashed all over the record of this case,[8] such an order is likely to result in the precise preclusion that this Court has already found to be unwarranted. Providence Piers, 2014 WL 5775663, at *5 ("sanction of preclusion is not warranted at this time"). For that reason, I decline to order the Geisser Report stricken if Providence Piers fails to pay the sanction. For its part, Providence Piers moves to strike both of the SMM rebuttal reports on grounds that they are late[9] and lack facts and data[10] and therefore do not comply with Fed. R. Civ. P. 26(a)(2)(B)(ii) or

---

[8] See, e.g., ECF No. 113 at 4-5, 15-16 (Providence Piers justifies failure to disclose expert based on its inability to afford to pay for expert work).

[9] This argument is a non-starter. First, Providence Piers ignores the holding of Providence Piers that SMM is allowed "a reasonable amount of time to determine whether supplemental rebuttal reports are needed," 2014 WL 5775663, at *5, thereby displacing the default period in Fed. R. Civ. P. 26(a)(2)(D)(ii). Further, the record establishes that SMM began work on this project immediately upon receipt of the Geisser Report and that SMM's experts started work on the rebuttal analysis and reports soon after. Moreover, Providence Piers never complained about the reasonableness of the time it took SMM to prepare the rebuttal reports as it was waiting for them. Rather, this argument was newly made at oral argument; Providence Piers did not even include it in its Objection. On that ground alone, it should be denied. See Sparkle Hill, Inc. v. Interstate Mat Corp., No. 14-1618, 2015 WL 3486700, at *3 (1st Cir. June 3, 2015) (not raising argument until too late for opposing party to respond in writing is sandbagging of a type that causes court to deem such issues waived); Indus. Commc'ns & Elecs., Inc. v. Town of Alton, No. 07-CV-082-JL, 2012 WL 4343759, at *21 (D.N.H. Sept. 21, 2012) (court should not reward party for sandbagging by accepting argument brought too late in the game).

[10] The challenge to the rebuttal reports based on the lack of facts and data is unavailing and a motion to strike on this basis should be denied. While Geisser's Declaration avers that each report lacks facts and data to support certain specified points, to the Court's untutored eye, both reports appear to be replete with facts and data. Accordingly, if there is any deficit, it is technical in nature, far from the complete absence of facts and data that tainted Geisser's initial expert disclosure and resulted in this Court's finding of noncompliance with Fed. R. Civ. P. 26(a)(2)(B).

11

26(a)(2)(D)(ii).  This motion has even less merit.  Asserted without any attempt to conduct the meet and confer mandated by Fed. R. Civ. P. 37(a)(1), it seems to be more of a tit-for-tat than a serious and substantive motion.  I recommend that all of the motions to strike be denied without prejudice.

A second threshold concern was whether to delay consideration of this motion until the Geisser deposition is completed so that the total amount of the sanction may be calculated at one stroke.  I do not adopt this approach.  SMM has cogently contended[11] that now is the right time to assess the amount of the sanction for the work done so far because there likely will never be a motion for more because the task of segregating from the total effort to prepare for and take the Geisser deposition the time that is "occasioned by supplementation" will be difficult, if not impossible.  While not waiving its rights, SMM has strongly stated its disinclination to bother with such an exercise.[12]  Importantly, Providence Piers does not argue for a short delay to complete the deposition.

With these preliminaries done, I turn next to what are the reasonable fees and costs "occasioned by supplementation."

Providence Piers's substantive attack on the reasonableness of the cost of the McLoughlin Report II boils down to the argument that it should have cost between $1,850 and $2,775, instead of $7,307.50, because much of it amounts to the same opinions that McLoughlin incorporated into his first report.  This argument cannot fly – SMM has been put to the cost of

---

Providence Piers, 2014 WL 5775663, at *5.  Using the yardstick set by Fed. R. Civ. P. 26(a)(2)(B)(ii), I recommend that Providence Piers's motion to strike these reports should be denied.

[11] Because I do not recommend that the Court condition the use of Geisser as an expert on the prompt payment of the sanction, I do not consider SMM's other argument, that Providence Piers's failure to pay the interim sanction will result in the Geisser Report being stricken, making the deposition unnecessary.

[12] While SMM has plainly not waived its right to seek the balance of the sanction ordered, a fee application for work in connection with the Geisser deposition will have to dig itself out of the hole dug by these representations about how hard it will be to determine what work is reasonably "occasioned by supplementation."

reviewing the Geisser Report, including its 265 pages of attachments, in the minute detail essential to permit an expert to respond to it. The fact that the detailed and time consuming effort engaged in by McLoughlin resulted in the conclusion at certain points that his original opinion is an apt response does not diminish the necessity to invest that time in the work. The McLoughlin invoice provides sufficient detail to permit the Court to confirm that all of the entries are reasonably related to the project and the total amount charged is well within what this Court's experience has taught is reasonable. Perhaps the ultimate test of reasonableness is the representation that SMM has paid for the work based on the amount invoiced. See Danaher Corp. v. Travelers Indem. Co., No. 10 Civ. 0121(JPO)(JCF), 2014 WL 4898754, at *2 (S.D.N.Y. Sept. 30, 2014) (amount actually paid by paying clients is compelling evidence of what is reasonable); Jalovec v. Synagro Midwest, Inc., No. 05-C-250, 2007 WL 4305602, at *7 (E.D. Wis. Dec. 7, 2007) (expert fee deemed reasonable when client already paid for it). I find that the time spent by SMM's structural engineering expert to prepare McLoughlin Report II is within the scope of the sanction assessed in Providence Piers and that the cost as laid out in the invoice ($7,307.50) is a reasonable charge for the work.

I apply the same reasoning to Aldinger Report II. Although Geisser claims that it is worth between $5,275 and $5,875, and not the full amount charged ($8,655), his critique is largely based on the number of cross-references to Aldinger Report I. However, the fact that Aldinger referenced his original analysis does not reduce the effort required to reach the conclusion that the cross reference is appropriate. With reasonable time entries that appear to be appropriately related to the task (except for the time entry for $280 that appears to be an error), adding up to an invoice that is consistent with what is reasonable based on this Court's experience and was paid by SMM, I find that the time spent by SMM's geotechnical engineering

13

expert to prepare Aldinger Report II is also within the scope of the sanction assessed in Providence Piers and that the cost as laid out in the reduced invoice ($8,375) is a reasonable charge for the work.

The next task is review of the attorneys' fees. SMM represents that they have already been culled to delete duplicative time. That is confirmed not only by how little duplicative time there is but also by one of Providence Piers's criticisms – time entries that refer to meetings or other work, yet there are no other time entries. Relying on the Court's experience, I find that the small amount of duplicative time spent by the team reviewing the Geisser Report is precisely the sort of effort that is "a common and frequently necessary practice" for attorneys working together on a case and is eminently reasonable. Ins. Recovery Grp., Inc., 2015 WL 1373372, at *7. Similarly, for a second attorney to dedicate a single hour to assist with the critical task of review and analyzing the work of the structural engineer is well inside the circle of reasonableness. While the half hour spent reviewing a plan related to Conley Wharf should be deleted as it does not appear to be related, otherwise, the time entries are more than sufficient to establish that the balance of the time is strictly limited to the work covered by the sanction, charged at the below-market rate of $215. Accordingly, I find that the attorneys' fees for 26.1[13] hours of work, yielding a total charge of $5,611.50, are clearly within the scope of the sanction assessed in Providence Piers and are reasonable in amount.

The final issue is the timing of Providence Piers's obligation to pay. SMM asks the Court to make the sanction due in fourteen days, while Providence Piers argues that it should be held until the termination of the litigation. I find that the former is too harsh while the latter is inconsistent with the spirit of a sanction, which is what this Court has already determined is

---

[13] I arrive at this number by subtracting off the top the one hour that SMM omitted from its fee calculation, and then subtracting another half hour for the work related to Conley Wharf. See n.7 *supra*.

appropriate. Nevertheless, Providence Piers has provided the Court with no guidance regarding what timing would make this burden one that it can afford to pay. Under such circumstances, I recommend that the Court order that Providence Piers pay half of this obligation within thirty days of the adoption of this report and recommendation, with the balance due thirty days thereafter. If this works an undue hardship, Providence Piers may return to the Court to seek relief. See Adams v. N.Y. State Educ. Dep't, No. 08 CIV. 5996 VM AJP, 2012 WL 2247881, at *2 (S.D.N.Y. June 18, 2012) (party must submit appropriate proof of inability to pay lump sum and propose payment schedule); Berry v. Ford Modeling Agency, Inc., No. 09-CV-8076, 2011 WL 3648574, at *3 (N.D. Ill. Aug. 18, 2011) (party must substantiate claims of penury); Carr v. Tillery, No. 07-314-DRH, 2010 WL 4781127, at *10 (S.D. Ill. Sept. 20, 2010) (party should explain amount of sanction it is able to pay).

## IV. CONCLUSION

I recommend that this Court grant the motion to enforce order (ECF No. 117) and award sanctions to SMM in the total amount of $21,294 ($7,307.50 for McLoughlin Report II, $8,375 for Aldinger Report II and $5,611.50 in attorneys' fees). I further recommend that the Court order that half of this sanction must be paid within thirty days of this Court's adoption of this report and recommendation, and that the remainder must be paid thirty days thereafter.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
June 24, 2015