UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PROVIDENCE PIERS, LLC,                   :
         Plaintiff,                   :
                                :
         v.                   :          C.A. No. 12-532S
                                :
SMM NEW ENGLAND, INC.,                   :
         Defendant.                   :

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

This contentious litigation focuses on an investment by Plaintiff Providence Piers, LLC, ("Providence Piers"), in an 1899-1900 commercial office building complex[1] on the Providence waterfront that it acquired and began renovating in 2004. Providence Piers' vision for the Property was based on the now-failed hope of its principal, Dr. Patrick Conley, that Providence would change the zoning for the area bounded by the head of Narragansett Bay from the heavy industrial use that has persisted since the nineteenth century. That has not happened. Instead, in October 2011, Defendant SMM New England, Inc., ("SMM") acquired the adjacent waterfront property; since, SMM has used its land to stockpile scrap metal in piles that grow up to seventy feet in height and 100 million pounds in weight up until periodically removed by container ship. A concrete fence is all that separates SMM's multi-million pound metal mountain from Providence Piers' renovated Property. At the core of this case is Providence Piers' claim that the impact of SMM's operations on the value of its Property has been catastrophic.

These motions to strike two of Providence Piers' late-disclosed experts (one of whom has been recast as a fact witness) are the latest in the parties' ongoing dispute over Providence Piers'

---

[1] The property in issue in this case includes not only the four-story commercial building constructed in the late nineteenth century, but also two more recent additions, an attached stair tower added in 2007 and outbuildings constructed between the 1920s and 1960s on slab with no foundation. Collectively, I refer to them as the "Property."

failure to make timely and compliant expert disclosures.  Specifically, SMM now asks this Court

to strike Glenn Ahlborg, the general building contractor who prepared an estimate of the cost to

rebuild the outbuildings ("Ahlborg Report"); the motion seeks to preclude Mr. Ahlborg from

testifying at all, whether as an expert or as a fact witness.  ECF No. 121.  In addition, SMM

moves to strike the January 23, 2015, expert report prepared by Robert A. Ryan, Providence

Piers' real estate appraisal expert ("Ryan Report").  ECF No. 124.

Both of these motions were referred to me for determination pursuant to 28 U.S.C. §

636(b)(1)(A).  For the reasons that follow, I find that both should be granted; because it is

conceivable that this determination could have dispositive impact on aspects of Providence Piers'

damages claims,[2] in an abundance of caution, I address them by report and recommendation.  28

U.S.C. § 636(b)(1)(B); see Ortiz v. Am. Airline, Inc., No. CIV. 13-1449 GAG, 2014 WL

3546841, at *1 n.1 (D.P.R. June 25, 2014) ("Because, as a practical matter, a ruling on plaintiffs'

motion . . . would constitute a ruling on . . .  the merits of this case, a report and recommendation

is being issued in lieu of an opinion and order.").  In the interest of efficiency, this report and

recommendation deals with the motions together, first laying out the common factual and

procedural background and the legal standard to be employed in considering a motion for

preclusion of a fact or an expert witness based on unjustified delay, then separately addressing

the specific facts and analysis pertinent to each motion.

---

[2] As developed during the discovery process, Providence Piers' damage claims were based on the catastrophic loss of rental income, the need to repair cracking in the stair tower, and the need to stabilize and repair the outbuildings. See ECF No. 121-5 at 10-11 (Providence Piers' response to damage interrogatory); ECF No. 91-3 at 1-2 (Geisser opinion served on expert disclosure deadline).  After all discovery deadlines were many months in the past and SMM had announced its intent to move for summary judgment based on Providence Piers' failure timely to designate a cost-to-repair witness, Providence Piers began to serve an array of new reports evidencing millions of dollars in damages with respect to the outbuildings based not on the need to stabilize and repair them, to which the earlier reports had opined, but rather on the need to demolish and rebuild them, this time with a 150 foot foundation. This has resulted in a flurry of motions, with each decision incrementally affecting Providence Piers' ability to present this theory of damages.

## I.      GENERAL FACTUAL AND PROCEDURAL BACKGROUND

The original Pretrial Scheduling Order in this case was entered on February 25, 2013; it set November 1, 2013, as the close of fact discovery and required expert disclosures to be supplied by January 10, 2014, with rebuttal expert disclosures due on January 31, 2014.  ECF No. 34.  Consistent with Fed. R. Civ. P. 26(a)(2), it warned that "[a]ny expert witness not disclosed by [this] date may not be allowed to testify unless authorized by the Court."  ECF No. 34.  Four assented-to motions to reset these pretrial deadlines followed; all were granted.  ECF Nos. 55, 56, 75, 84.  Each time, all deadlines were extended; the last of the four extended the close of fact discovery to May 9, 2014, and the close of Providence Piers' expert disclosure deadline to June 16, 2014, with SMM's rebuttal expert disclosures due on August 8, 2014.  Text Order, Apr. 29, 2014.  On June 16, instead of its expert reports, Plaintiff filed an emergency assented-to motion to extend all open deadlines by two weeks, asserting:

> The reason for this extension is that the Plaintiff needs additional time to complete its expert report; additionally the Defendant will be conducting an inspection of Plaintiff's building which may or may not affect Defendant's expert report.  Without an extension, the Plaintiff will be functionally precluded from being able to provide . . . a final version of its Expert Report.

ECF No. 90 at 2.  The Court granted the motion and reset the deadline for Plaintiff's expert disclosures to June 30, 2014, with rebuttal disclosures due August 22, 2014, and the close of all expert discovery on October 20, 2014.  These are the deadlines that remain in place to this day.

On the expert disclosure deadline, Providence Piers disclosed George Geisser of Geisser Engineering Corporation[3] as its only expert opining on the causal link between the structural damage to the buildings on the Property and SMM's operations, including the impact on the unstable soil caused by the pressure of the massive weight of the scrap pile and the vibrations

---

[3] By agreement of the parties, Steven Bogle, P.E., of Geisser Engineering Corporation, has been substituted as the designated testifying expert for Mr. Geisser.  ECF No. 131, granted by Text Order of August 4, 2015.  To avoid confusion, I use Mr. Geisser's name to refer to his work.

associated with SMM's site work; among other conclusions, his expert report opined that without stabilization and repair one or more of the outbuilding walls would collapse.  ECF No. 91-3 at 3. On Defendant's motion to strike the report, the Court found "profound noncompliance with Rule 26(a)(2)(B)," and that the violation of the Fed. R. Civ. P. 26(a)(2) expert disclosure obligation was neither substantially justified nor harmless.  Providence Piers, LLC v. SMM New England, Inc., No. 12-535 S, 2014 WL 5775663, at *3-5 (D.R.I. Nov. 6, 2014) ("Providence Piers I"). Nevertheless, finding that striking the report would be the death knell of Plaintiff's property damage claims, and that the inadequate expert report was "a one-time, albeit major, breach of the rules," and not the result of malice or bad faith, the Court permitted Providence Piers to supplement it, with the strict proviso that Geisser's opinions would not change, no new opinions would be added and, as a sanction, Plaintiff would pay the attorneys' fees and costs occasioned by the supplementation.  Id. at *5-6.  The holding is plain: "[a]ny supplemental report will only address the deficiencies identified in this order; no alteration or additional opinions are permitted."  Id. at *6.  Geisser's supplemental report was served on December 5, 2014.

According to SMM, the next material event was a status conference with the Court held two weeks later, on December 18, 2014.  During the conference, SMM's counsel advised the Court (and Providence Piers) of its intent to move for partial summary judgment, challenging Providence Piers' ability to prove damages based in part on the lack of an expert.  A month later, on January 22, 2015, Providence Piers filed an untimely motion to extend the expert discovery period.  ECF No. 103.  Because this motion was vague as to what it was trying to accomplish, the Court directed Plaintiff to serve and file its proposed new expert reports, which it did on February 6, 2015.  They turned out to be a third report by Geisser ("Geisser Report") (ECF No. 106-2), and the Ahlborg Report (ECF No. 107-4).

The third Geisser Report opines that the cracking of the slab-based outbuildings has accelerated[4] and that the only way to repair them now would be either to demolish and rebuild or to pursue a "complex foundation underpinning program." ECF No. 106-1 at 9, 106-2 at 2-3. The Report concludes that the only practical solution is to demolish and rebuild the outbuildings, curing their lack of foundation with a "new deep foundation" that "should extend down approximately 150 feet." ECF No. 106-2 at 1-3. The Ahlborg Report, served the same day as the Geisser Report, is signed by Glenn Ahlborg, director of project development and construction for Ahlborg Construction Corporation; it relies on the Geisser Report, consultation with Geisser Engineering, "several site visits" and Mr. Ahlborg's "extensive experience in construction" to conclude that "the most prudent and safe course of action would be to demolish the existing single story structures [the outbuildings] in their entirety, and rebuild them with a deep foundation." ECF No. 107-4 at 2, 4. The Ahlborg Report opines that the total estimated cost of demolition and reconstruction of the single story outbuildings with a deep foundation in compliance with applicable codes is $2,301,668. ECF No. 107-4 at 4. In addition to designating it as an expert report, soon after it was served, Providence Piers alternatively asserted that the disclosure of the report had been done as a courtesy and that it planned to call Mr. Ahlborg as a fact witness to testify to the same conclusions. ECF No. 107 at 13-14.

A month later, on March 10, 2015, Providence Piers served a third out-of-time expert report, this one a real estate valuation report of the Property signed on February 13, 2015; it opines to value as of January 23, 2015. Prepared by Mr. Ryan, it pegs the value of the building at $1,125,000, "without regard to the structural deficiencies present at structure." ECF No. 124-

---

[4] Whether the third Geisser Report's conclusion that the outbuildings must be rebuilt with a deep new foundation is a permissible supplementation of Geisser's original opinion pursuant to Fed. R. Civ. P. 26(e), properly based on the new development of the acceleration of the collapse of the walls, or whether it is an impermissible new opinion is beyond the scope of this report and recommendation. See ECF No. 113 at 12 & n.11.

6 at 2-32 ("Ryan Report").  It then subtracts the cost to completely rebuild the outbuildings with

a deep foundation ($2,301,668) in reliance on the Ahlborg Report and concludes that the market

value of the Property is "zero ($0)."  ECF No. 124-6 at 31.

On April 29, 2015, the Court denied Providence Piers' motion to extend the discovery

closure deadline, leaving the Geisser Report, the Ahlborg Report and the Ryan Report as

untimely to the extent that they constitute new (as opposed to supplemental) expert disclosures.

Providence Piers, LLC v. SMM New England, Inc., No. CA 12-532S, ECF No. 113 at 19 (D.R.I.

Apr. 29, 2015) ("Providence Piers II").  This determination was based on the prejudice inflicted

on SMM from reopening expert discovery months after it had closed and months after SMM had

invested in its rebuttal expert reports based on what had been timely disclosed.  It also was based

on Providence Piers' inability to sustain its burden of demonstrating excusable neglect for the

lengthy delay.  Id. at 15, 19.

## II.    APPLICABLE LAW REGARDING EXPERT AND FACT WITNESS PRECLUSION

The requirement to make timely disclosure of new expert witnesses and their reports is

set out in Fed. R. Civ. P. 26(a)(2).[5]  The timing of the disclosure of a fact witness is controlled

initially by Fed. R. Civ. P. 26(a)(1) (duty to make initial disclosures) and Fed. R. Civ. P. 33(b)(3)

(duty to answer interrogatories fully), but ultimately by Fed. R. Civ. P. 26(e), which imposes the

duty to supplement interrogatory answers "in a timely manner . . . if the additional or corrective

information has not otherwise been made known to the other parties during the discovery process

---

[5] SMM argues that the "law of the case" flowing from the determination in Providence Piers II, at 19, that the expert disclosure deadline would not be reopened controls the outcome of these motions.  Not so.  While SMM is right that "legal decisions, or rulings of law, made by a court at a particular stage of a civil . . . proceeding become 'law of the case,' and . . . thereafter these determinations govern the same issues in subsequent stages of the same litigation, unless corrected by appellate review," McConaghy v. Sequa Corp., 294 F. Supp. 2d 151, 160 (D.R.I. 2003), this Court has not yet addressed whether, regardless of the discovery deadlines, Providence Piers nevertheless should be permitted to call Mr. Ahlborg and introduce the Ryan Report.  The law of the case would be in play if Providence Piers sought to reopen discovery, but it has not done so.

or in writing."  The consequence of noncompliance with both Fed. R. Civ. P. 26(a) and 26(e) is

governed by Fed. R. Civ. P. 37(c)(1), which provides that a party that "fails to . . . identify a

witness as required by Rule 26(a) or (e) . . . is not allowed to use that information or witness to

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless."  See Pena-Crespo v. P.R., 408 F.3d 10, 13 (1st Cir. 2005) ("[E]xclusion

of evidence is a standard sanction for a violation of the duty of disclosure under Rule 26(a).");

Grajales-Romero v. Am. Airlines, Inc., 194 F.3d 288, 297 (1st Cir. 1999) ("Rule 37(c)(1)

provides an exclusionary sanction for failures to disclose witnesses as required by Fed. R. Civ. P.

26").  The party facing preclusion has the burden of proving substantial justification or

harmlessness.  Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 21 (1st Cir. 2001).

Substantial justification "does not mean justified to a high degree, but only justified in

substance or in the main – that is, justified to a degree that could satisfy a reasonable person."

JJI Int'l, Inc. v. Bazar Grp., Inc., No. 11-206ML, 2013 WL 3071299, at *5 (D.R.I. Apr. 8, 2013)

(action is substantially justified if there is a "genuine dispute" or "if reasonable people could

differ as to the appropriateness of the contested action").  Delay is not justified if the party knew

of the existence of the witness or of the need for the expert, including of the potential that the

witness would be important, but waited until after discovery closed to procure him.  Harriman v.

Hancock Cty., 627 F.3d 22, 29-31 (1st Cir. 2010) (untimely disclosure of fact witnesses results in

preclusion where litigant aware of need to find witness before discovery close, so that late

disclosure looked "less like an oversight and more like a tactic").

Harmlessness entails a fairly limited concept.  Providence Piers I, at *4.  It is intended "to

avoid unduly harsh penalties in a variety of situations."  Gagnon v. Teledyne Princeton, Inc., 437

F.3d 188, 197 (1st Cir. 2006).  "Illustrative examples are late disclosures of a potential witness

known to all parties, a trial witness already listed by the adverse party, or a witness on behalf of a

pro se litigant ignorant of the requirement." Id.  However, if the delay leaves the opposing party

without the time to do the investigation, depositions and procurement of expert opinions it would

need to rebut the late disclosed evidence, except through additional expense and derailment of

the scheduling order, it is not harmless.  Alden v. Office Furniture Distribs. of New England,

Inc., No. 1:10-CV-00316-GZS, 2011 WL 1770948, at *3 (D. Me. May 9, 2011) (if tardy

disclosure will impact scheduling order or other party's ability to respond to evidence, it is not

harmless); Vigilant Ins. v. E. Greenwich Oil Co., 234 F.R.D. 20, 24 (D.R.I. 2006) (failure timely

to disclose experts is prejudicial because opposing party could have taken countermeasures,

including holding depositions and retaining experts of its own).

 If a party's noncompliance in disclosing a witness, an expert or his report is neither

substantially justified nor harmless, the baseline sanction called for by Fed. R. Civ. P. 37(c)(1) is

preclusion.  Nevertheless, even when a party "has not shouldered its burden on either preclusion

escape hatch, . . . preclusion is not a strictly mechanical exercise, and this Court has discretion to

choose a less severe sanction."  Providence Piers I, at*3-4; see Vigilant Ins., 234 F.R.D. at 24.  In

selecting the appropriate sanction, courts consider "a multiplicity of pertinent factors, including

[1] the history of the litigation, [2] the proponent's need for the challenged evidence, [3] the

justification (if any) for the late disclosure . . . [4] the opponent's ability to overcome its adverse

effects, including [s]urprise and prejudice . . . [and 5] what the [incomplete] disclosure portends

for the court's docket."  Samaan v. St. Joseph's Hosp., 670 F.3d 21, 36-37 (1st Cir. 2012);

Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 78 (1st Cir. 2009); Providence Piers I, at *4.

 If a lesser sanction (such as attorney's fees) has already been tried, yet the conduct is

repeated, or if the lesser sanction will not be effective because a fee award will not be paid, it is

appropriate to consider more draconian sanctions.  <u>Baltimore v. Jim Burke Motors, Auto.</u>, 300 F.

App'x 703, 707 (11th Cir. 2008) (per curiam) (plaintiff's refusal to pay attorney's fees as a lesser

sanction establishes that other lesser sanctions would not suffice); <u>Faust v. Cabral</u>, No. 1:12-CV-

11020, 2015 WL 3953185, at *3 (D. Mass. May 15, 2015) (lesser sanctions, such as assessing

attorney's fees or costs, are not effective if fee award cannot be paid); <u>see</u> <u>Afreedi v. Bennett</u>,

517 F. Supp. 2d 521, 527 (D. Mass. 2007) (in assessing what sanction to impose, court may

consider repetition of violations and adequacy of lesser sanctions).  On the other hand, "when

'[a] sanction carrie[s] the force of a dismissal, the justification for it must be comparatively more

robust."  <u>Providence Piers I</u>, at *4; <u>see</u> <u>Esposito</u>, 590 F.3d at 80 ("the punishment must

approximately fit the crime").  For example, the court may strike witnesses who were not timely

disclosed under Rule 37 when the nondisclosure is not an isolated violation of the Court's

scheduling order.  <u>See</u> <u>Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de</u>

<u>P.R.</u>, 248 F.3d 29, 36 (1st Cir. 2001).

## III.   MOTION TO PRECLUDE AHLBORG FROM TESTIFYING

### A.   Facts Pertaining to Ahlborg Motion

During the discovery period, and long prior to the expert disclosure deadline, Providence

Piers littered the case with hints, but never a firm disclosure, about the possibility that it might

present expert testimony regarding the cost to repair from a building contractor, including from

Ahlborg Construction Corporation.  For starters, among the many witnesses listed in Providence

Piers' May 22, 2013, answers to interrogatories[6] are two building contractors.  ECF No. 121-5 at

4-5.  First, identified as a "General Contractor," Albert Beauparlant is named as a witness to the

"Structural damage to the Property caused by SMM's operations;" second, identified as

---

[6] The pertinent interrogatory is the first in SMM's first set; it asks Providence Piers to identify all persons with knowledge of the matters set forth in the complaint.  ECF No. 121-5 at 2.

"Building Contractor & Building Superintendent," Michael Dubois is named as a person with knowledge. ECF No. 121-5 at 4-5. However, neither Glenn Ahlborg nor his company, Ahlborg Construction Corporation, is mentioned in these answers.

In addition to its awareness of the need for a cost-to-repair witness for the litigation, Providence Piers knew that it needed a building contractor for the Property as of April 2013 (long before the close of fact discovery), when the City of Providence notified it that the outbuildings were unsafe and not fit for occupancy. ECF No. 125 at 4. Providence Piers represents that Ahlborg Construction Corporation was approached early in the case about estimating the cost to repair the outbuildings in part as a result of that notice, as well as for the litigation. Providence Piers now claims that it did not follow through because it could not afford to do so.[7] Nevertheless, prior to the expiry of any of the relevant deadlines, Providence Piers informed SMM that it *might* engage Mr. Ahlborg to testify as an expert on cost-to-repair damages, but that no report had been prepared. SMM acknowledges that, while fact discovery was still open, its attorney was told that Providence Piers was hoping to get Mr. Ahlborg to agree to be an expert, but that it did not seem to be working out. Fact discovery and then expert discovery both closed without disclosure of Mr. Ahlborg or anyone else from Ahlborg Construction Corporation as either a fact or an expert witness.

At some point unknown to the Court, presumably well after both the close of fact discovery and the expert disclosure deadline, Providence Piers did engage Mr. Ahlborg, for

---

[7] Providence Piers explains that it wanted Ahlborg Construction Corporation to estimate what it would charge to repair the Property and that, normally, the cost of such an estimate would be credited towards the cost of doing the work. Since Providence Piers could not afford to have the repairs done, Mr. Ahlborg insisted on being paid for his time to prepare an estimate. Providence Piers claims that prior to the discovery closure deadlines, it could not afford even this expense. This claim – that it could not afford to engage experts – was asserted as the basis for "excusable neglect" in support of Providence Piers' motion to extend the expert disclosure deadline; it was rejected by the Court as insufficiently supported, inconsistent with the available facts and, in any event, not amounting to excusable neglect. Providence Piers II, at 15-17 ("strategic decision to allocate litigation resources away from a particular expert in favor of other expenses does not constitute excusable neglect").

$2500 to prepare an estimate, plus $150 per hour to testify.  As a result, he made "several site visits" to the Property, reviewed the Geisser Report and "consulted with a representative of Geisser Engineering."  ECF No. 107-4 at 2.  Based on this investigation and his "extensive experience in construction," he opined "that the most prudent and safe course of action would be to demolish the existing single story structures in their entirety, and rebuild them with a deep foundation based upon the recommendations of Geisser Engineering," which would result in single story structures comparable to what were in place prior to the SMM operations.  ECF No. 107-4 at 2, 4.  His estimate of the cost to rebuild the outbuildings incorporates the cost of "extraordinary construction measures" to withstand the outbuildings' proximity to the SMM operations.  ECF No. 107-4 at 4.  He signed his report on February 4, 2015; it was served on SMM on February 6, 2015, seven months after the expert disclosure deadline.  Soon after, in Providence Piers' third set of answers to interrogatories, signed by Dr. Conley on March 10, 2015, Mr. Ahlborg was identified as a testifying expert designated to opine that the estimated cost to demolish and rebuild the outbuildings is $2,301,668, based on Ahlborg's Construction Corporation's usual and customary project bidding rates.  ECF No. 121-6 at 9, 15.

Because Mr. Ahlborg was never disclosed as a fact witness and was not disclosed as an expert until months after the close of expert discovery, SMM has never deposed him.

The first suggestion that Mr. Ahlborg might be called, not as an expert, but rather as a fact witness, is found in Providence Piers' supplemental memorandum (ECF No. 107 at 13-14), filed on February 19, 2015, in connection with its motion to extend the expert disclosure deadline.  See Providence Piers II, at 4 n.6.  Then, at oral argument in connection with the motion to strike Mr. Ahlborg, Providence Piers announced that it has entirely withdrawn both the Ahlborg Report and the designation of Mr. Ahlborg as an expert; it represents that it now intends

to call Mr. Ahlborg only as a fact witness for two purposes.  First, it intends to ask him to testify

about his observation of the physical damage to the single story outbuildings based on the

"several site visits" he made in connection with the preparation of the estimate in the Ahlborg

Report.  In promoting him as a fact witness on this basis, Providence Piers concedes that Mr.

Ahlborg's testimony regarding his observations is likely duplicative of the testimony of the many

other fact witnesses who can testify to the same observations.  Second, arguing that a building

contractor's estimate of what he would charge to do specific work is fact evidence and not an

expert opinion, Providence Piers proposes to call Mr. Ahlborg as a fact witness to testify to his

lay opinion of the cost to rebuild the outbuildings.

      B.    <u>SMM's Motion</u>

      SMM moves to preclude Providence Piers from calling Mr. Ahlborg, whether as an

expert witness or a fact witness, because any testimony he might give is based on his

engagement as an expert long after discovery had closed to testify to an opinion regarding a

damage theory not revealed during discovery.  It argues that the attempt to relabel Mr. Ahlborg

as a fact witness alters nothing because his opinions are not lay, but expert, and his only

knowledge of any relevant facts was gained from preparing those opinions.  Further, it would be

unethical and prejudicial to permit Mr. Ahlborg to testify as a fact witness when he has already

been paid for developing his expert opinion.  In any event, shifting his status to fact witness does

not solve the litigation-by-ambush problem – Mr. Ahlborg was not disclosed either in initial

disclosures or in discovery responses as a person with knowledge of relevant information; as a

result, he was not deposed.  Acknowledging that the Ahlborg expert disclosure is late,

Providence Piers counters that all of Mr. Ahlborg's testimony will be based either on his

perceptions or his lay opinions and that his recent emergence as a newly disclosed fact witness is

12

a permissible supplementation to its interrogatory answers pursuant to Fed. R. Civ. P. 26(e)(1)(A) (permits litigant to introduce new information by supplementation after end of discovery process as long as either supplementation is made timely following discovery of new information or new information was otherwise made known during discovery process).

   C.   <u>Ahlborg Analysis</u>

   By its last minute switch in withdrawing Mr. Ahlborg as a testifying expert and his Report as an expert disclosure, Providence Piers has side-stepped its burden to substantially justify, and demonstrate the harmlessness of, its extraordinary delay in making this disclosure. SMM argues vociferously that Providence Piers' game plan is not opaque – it now intends to call Mr. Ahlborg as a fact witness with the hope that, in the fog of trial, all of Mr. Ahlborg's expert opinion evidence will slip in.  Accordingly, SMM urges the Court to affirmatively rule the expert opinion out of bounds despite Providence Piers' change of strategy.  The problem is that Mr. Ahlborg is no longer presented as an expert and his Report is no longer an expert disclosure, mooting SMM's motion to strike to that extent.  As a result of the withdrawal of Mr. Ahlborg as an expert, Providence Piers has not even attempted to justify the late disclosure or to establish that it caused no harm to SMM.  On this record, I decline to recommend that this Court make a finding of lack of substantial justification and harmlessness or grapple with the difficult question that follows such a finding – whether preclusion, instead of some lesser sanction, is now required.  If the Ahlborg Report is presented again, Providence Piers presumably will then have to face up to its burden of establishing substantial justification and harmlessness.  It need not do so now.

   With the elimination of the question whether preclusion is the proper consequence for the untimeliness of Mr. Ahlborg's expert disclosure, two issues remain: first, what is the fact

13

testimony and what are the lay opinions that Mr. Ahlborg may present; and, second, should

Providence Piers' failure to name him during fact discovery as a person with relevant knowledge

with respect to those facts and lay opinions preclude it from calling him as a fact witness.

There is no doubt that Mr. Ahlborg's site visits, which are referred to in his Report, can

form the foundation for fact testimony about what he observed.  However, Providence Piers

concedes that, if his testimony is so limited, Mr. Ahlborg is just one of many witnesses able to

testify to such observations (including at least two described as building contractors) so that he

may well be ruled out of bounds because his testimony is needlessly cumulative and therefore

inadmissible pursuant to Fed. R. Evid. 403.  The more complex question is whether Mr. Ahlborg

may be called as a fact witness to testify to his estimate of what Ahlborg Construction

Corporation would charge to rebuild the outbuildings with a deep foundation.  Providence Piers

argues that he can in that such opinions fall within the purview of Fed. R. Evid. 701, which

permits a fact witness to testify to an opinion based on his perception and not based on

"scientific, technical, or other specialized knowledge within the scope of Rule 702."

The recasting of Mr. Ahlborg's opinions from expert to lay runs contrary to the holdings

of most of the well-reasoned cases addressing whether a cost estimate prepared by a professional

in the field with respect to future repairs is expert testimony within the scope of Fed. R. Evid.

702.  Apart from the carve-out permitting a property owner to give a lay opinion on the cost to

perform future work on his or its own property, fact testimony by a builder or repairer is

generally limited to observations of damaged property and to the cost of work actually performed

while estimating the cost of future work is generally the subject of expert testimony.  Tampa Bay

Shipbuilding & Repair Co. v. Cedar Shipping Co., 320 F.3d 1213, 1221-23 (11th Cir. 2003)

(owner of repair company may give lay opinion regarding repair charges and subcontractor

responsible for rudder repair may give fact testimony regarding actual repairs done); Wickman v. State Farm Fire & Cas. Co., 616 F. Supp. 2d 909, 920-21 (E.D. Wisc. 2009) (while non-expert owner may testify to value of real property, feasibility and cost of repairing are clearly issues that require technical or other specialized knowledge beyond that of ordinary lay person); Int'l Rental & Leasing Corp. v. McClean, 303 F. Supp. 2d 573, 578-79 (D.V.I. 2004) (employee of owner of vehicle is competent to give lay opinion regarding cost to repair vehicle).  In a handful of cases, when the repair estimate is based on personal observation, the failure of a tradesman to write a Fed. R. Civ. P. 26(a)(2)-compliant report has led some courts to prevaricate, either postponing the final determination until trial, or permitting the witness to testify to observations of damage that he personally witnessed, sometimes including a simple estimate of what he would charge to repair that damage.  Navarrete v. Gen. Ins. Co. of Am., No. 07-4865, 2009 WL 1636967, at *1 (E.D. La. June 11, 2009) (while striking insufficient expert report, court permits roofing contractor, designated as both fact and expert witness, to testify to roof damage he saw, including estimate of what he would charge to repair it); Manoma Realty Mgmt., LLC v. Fed. Pac. Elec. Co., No. 02 Civ. 0494, 2007 WL 2175947, at *5 (S.D.N.Y. July 27, 2008) (dueling motions to strike opposing parties' cost-to-repair experts denied despite failure of both to comply with Fed. R. Civ. P. 26(a)(2) because both based solely on personal observation; court reserves to trial whether testimony is expert or lay).

Otherwise, focusing on the definition of expert testimony in Fed. R. Evid. 702 (evidence based on "scientific, technical, or other specialized knowledge"), courts overwhelmingly hold that estimating the cost of a complex repair requires the forecasting of the amount, type and costs of materials and labor, which are not common knowledge or familiar in everyday life; accordingly, predicting future repair costs requires specialized knowledge and is expert, not lay,

testimony.  Pendarvis v. Am. Bankers Ins. Co. of Fla., 354 F. App'x 866, 869 & n.*** (5th Cir.

2009); see, e.g., St. Panteleimon Russian Orthodox Church, Inc. v. Church Mut. Ins. Co., No. 13-

CV-1977, 2015 WL 283044, at *7 (D. Minn. Jan. 22, 2015) (estimating amount and cost of

materials and labor needed to complete repairs requires specialized knowledge that cannot be

presented under Fed. R. Evid. 701); Montalvo v. Am. Family Mut. Ins. Co., No. CV-12-02297,

2014 WL 2986678, at *5-6 (D. Ariz. July 2, 2014) (testimony regarding estimated repair costs

falls within scope of specialized knowledge; plaintiffs may not evade Fed. R. Evid. 702's

requirements "through the simple expedient of proffering an expert in lay witness clothing")

(quoting Fed. R. Evid. 701 advisory committee notes to 2000 amendments); Dennis v. Allstate

Ins. Co., No. 10-795, 2012 WL 6045912, at *3 (E.D. La. Dec. 5, 2012) (precluding lay witness

from testifying to estimates of cost of future repairs to property).

       The only case cited by Providence Piers that potentially supports its position is Steffy v.

Home Depot, Inc., No. 1:06-CV-02227, 2009 WL 4279878 (M.D. Pa. June 15, 2009).  In Steffy,

the key expert testimony came from an air quality expert who was prepared to testify that the

formaldehyde in plaintiffs' building was caused by plywood paneling that must be removed.  Id.

at *6.  All that remained for the cost-to-repair witnesses was to testify to what their own

companies would charge to remove and replace the paneling.  The court found that this

testimony would be limited to their personal knowledge of the amount their companies would

charge to remove a panel and replace it with a new one and was based solely on "particularized

knowledge that the witness has by virtue of his or her positon in the business," as permitted by

Fed. R. Evid. 701.  It would not involve the "technical, or other specialized knowledge" that is

the basis of a Fed. R. Evid. 702 opinion.  Id. at *9 n.3.

Such a simple estimate of the cost to remove and replace a specified number of plywood panels is a far cry from the complex opinions developed by Mr. Ahlborg for Providence Piers – to prepare his estimate, he had to perform a site analysis, draw conclusions about necessary permits and engineering services, make a determination of the "most prudent and safe course of action" for the Property, evaluate a complex engineering report, respond to environmental considerations, develop pricing for the installation of forty perimeter piles extending 150 feet in the underlying soil, analyze the placement of utility hook-ups and the need to relocate them and develop opinions regarding applicable code and bonding requirements.  Whether rightly or wrongly decided, Steffy does not support the proposition that such a complex opinion, so clearly based on technical and specialized knowledge, may be presented under Fed. R. Evid. 701.

Confirming the expert nature of Mr. Ahlborg's proposed testimony is the reality disclosed in his Report that it was not based solely on his personal observation.  Rather, he relied not only on his own "extensive experience in construction," but also on his consultation with Geisser Engineering and on the Geisser Report opinion regarding the nature of the foundation required to make the outbuildings viable.  Such reliance on a complex engineering report in itself requires a technical and specialized knowledge of the relationship between the engineering concepts in the Geisser Report and the construction techniques required to respond to them; it underscores the extent to which Mr. Ahlborg has developed an opinion vastly beyond the percipient-based opinion permitted by Fed. R. Evid. 701.  United States v. Tanguay, 895 F. Supp. 2d 284, 289 (D.N.H. 2012) (lay testimony results from reasoning familiar in everyday life, while expert testimony results from reasoning which can be mastered only by experts in field).  As the court stated in Bray & Gillespie IX, LLC v. Hartford Fire Insurance Co., No. 6:07-CV-326, 2009 WL 1953649, at *4 (M.D. Fla. July 6, 2009):

There is a marked difference between traditional lay opinion testimony, which relates to personally observed existing matters (*e.g.*, "he looked drunk," "it was about a mile away," "it was more than 20 pounds") and the type of testimony offered here – a true opinion regarding a matter that has yet to occur [the estimated cost to repair the property], based on the specialized knowledge of "profession[als] in the construction business, who make these kinds of assessments on a daily business [sic] as part of their profession." . . . opinions as to the cost to repair are within the purview of expert testimony, and Plaintiffs' failure to designate and tender the witnesses as experts forecloses their use as such at trial.

What remains is Mr. Ahlborg as a percipient witness based on his site visits, bringing the issue full circle back to Providence Piers' delays in complying with its discovery obligations. Despite being aware of the possibility that Mr. Ahlborg might be a witness prior to the close of fact discovery, he was not identified as a fact witness in initial disclosures as required by Fed. R. Civ. P. 26(a)(1)(A)(i), in Providence Piers' interrogatory answers as required by Fed. R. Civ. P. 33(b)(3), or in Providence Piers' several supplemental interrogatory answers as required by Fed. R. Civ. P. 26(e) – rather, he was disclosed for the first time (as an expert) nine months after the close of fact discovery and the first suggestion that he might be called as a fact witness came in its supplemental memorandum on its motion to extend expert discovery.  ECF No. 107.

The most troubling aspect of the tardiness of Mr. Ahlborg's disclosure is that the timing of the engagement of a building contractor to estimate the cost of repair was entirely within Providence Piers' control.  Providence Piers concedes that, wholly apart from the claims at issue in this litigation, it had known of the need to make substantial repairs to the outbuildings since April 2013, well inside the fact discovery period, when it got a letter from the City of Providence.  It further admits that it was considering getting an estimate from Mr. Ahlborg that it would use as an expert opinion in this case "early in the litigation" and well before fact discovery closed.  ECF No. 125 at 7.  It admits that it told SMM that it might name Mr. Ahlborg as a testifying expert long before fact discovery closed.  Yet it delayed and took no action; from what

18

the record now reveals, Providence Piers delayed the procuring of an opinion from Mr. Ahlborg until after SMM had completed its depositions of Providence Piers' disclosed fact witnesses, analyzed Providence Piers' expert disclosures and paid for its own rebuttal disclosures, all based on the damage theories that Providence Piers had disclosed.  Without any other plausible explanation,[8] it is difficult not to conclude that this delay was strategic.

Rather than attempting to establish substantial justification or harmlessness, Providence Piers argues that its late-breaking addition of Mr. Ahlborg to its list of persons with knowledge is simply a permissible supplementation pursuant to Fed. R. Civ. P. 26(e), which imposes the duty to supplement the interrogatory answers "in a timely manner."  When read in light of the reality that Mr. Ahlborg was in communication with Providence Piers about the Property from early in the litigation, yet it delayed the engagement and the disclosure until every discovery ship had sailed, the assertion that the disclosure was timely rings hollow.  Harriman, 627 F.3d at 29-31 ("salient point is that [plaintiff] knew during discovery" that potential witness existed yet did nothing until after discovery closed; witness precluded from testifying); AVX Corp. v. Cabot Corp., 251 F.R.D. 70, 76 (D. Mass. 2008) (precluding use of supplemental answer to a damages interrogatory served after close of expert and fact discovery because "[s]upplementing the computation of damages or providing the calculation for the first time after the close of fact and expert discovery . . . is not timely" under Rule 26(e)).  Providence Piers' inordinate delay in the designation of Mr. Ahlborg as a person with relevant knowledge may not be rescued by labeling it as a timely supplementation pursuant to Fed. R. Civ. P. 26(e).

Alternatively, Providence Piers argues that its duty timely to supplement is excused by its informal notice to SMM that Mr. Ahlborg might be engaged as an expert.  Fed. R. Civ. P. 26(e) (no need to supplement if information had otherwise been made known).  This too is a non-

---

[8] See n.7 supra.

starter.  Courts consistently hold that naming a fact witness does not constitute notice that the witness is a testifying expert.  See Esposito, 590 F.3d at 78 ("the rules require formal disclosure for a reason: without it, parties . . . may be hindered in their ability to prepare for trial"); Samaan v. St. Joseph Hosp., 274 F.R.D. 41, 47-49 (D. Me. 2011), aff'd, 670 F.3d 21 (2012) (extreme prejudice would be caused by eleventh-hour decision to allow plaintiff to convert two fact witnesses into experts on causation); Vigilant Ins., 234 F.R.D. at 22 (Rule 26(a)(1) disclosures are not in lieu of Rule 26(a)(2)(A) disclosures; "[Defendants] should not be made to assume that each witness disclosed by [Plaintiff] could be an expert witness at trial.").  The reverse is equally true, perhaps more so in that an expert is usually a person with no percipient knowledge other than what is used to develop the opinion.  Put differently, there is nothing in what Providence Piers now claims it told SMM that put SMM on notice that Mr. Ahlborg needed to be deposed as a fact witness who might have information potentially pertinent to damages.  To the contrary, Providence Piers' disclosure informed SMM that Mr. Ahlborg did not have any percipient knowledge of the Property in that he was under consideration only for engagement as an expert, which Providence Piers then deemed unlikely to happen.

With all of the escape hatches closed, the final question is whether preclusion is the right consequence for the untimely disclosure of Mr. Ahlborg as a fact witness.  For that answer, the Court returns to the factors laid out in Samaan, 670 F.3d at 36-37 (history of the litigation; proponent's need for evidence; justification for late disclosure; harm to opponent; and impact on court's docket).  Unlike the first time that test was applied in this case, Providence Piers I, at *4, weighing these factors now tips in favor of preclusion.  The first consideration is that this is not the first failure to comply with Fed. R. Civ. P. 26(a) requirements for timely disclosure to avoid litigation-by-ambush.  Further, as SMM points out, the lesser sanction of attorney's fees,

imposed in response to the first Fed. R. Civ. P. 26(a) violation, was ineffective in that Providence

Piers has continued to make untimely disclosures and in that the fee-based sanction remained

unpaid, ultimately requiring SMM to incur the additional expense of a motion to compel

payment.[9] Jim Burke Motors, 300 F. App'x at 707 (plaintiff's refusal to pay attorney's fees as

lesser sanction establishes that other lesser sanctions would not suffice).  Also tipping in favor of

preclusion is Providence Piers' failure to justify the long delay and the obvious prejudice to

SMM from having to respond to new fact evidence from a witness like Mr. Ahlborg.  Finally,

Providence Piers' has not argued that its need for Mr. Ahborg as a percipient witness is great; to

the contrary, it concedes that as an observer of the damage to the Property, he will be in line

behind many other properly disclosed fact witnesses, including witnesses identified as

"contractors."  Rather, Providence Piers seemingly wants him available as a fact witness to keep

his withdrawn expert opinion in play in the case.[10]  This time, I find that the balance tips in favor

of preclusion of Mr. Ahlborg as a fact witness and recommend that the Court so order.[11]

---

[9] On July 20, 2015, the Court ordered Providence Piers to pay SMM $21,294 in costs and fees in two installments, half by August 19, 2015, and the other half by September 18, 2015.  ECF No. 130.  As of this writing, the Court is unaware whether Providence Piers has yet complied with this order.

[10] Providence Piers asks this Court to employ the flexibility reflected in Laconner Assocs. Ltd. Liability Co. v. Island Tug & Barge Co., No. C07-175RSL, 2008 WL 2077948, at *3 (W.D. Wash. May 15, 2008), where the court held that a contractor, who was not disclosed as an expert, could testify as a fact witness regarding his observations and the cost of the work done, leaving open whether he might be allowed during trial to expand the scope of his testimony to include his expert opinions.

[11] I reject SMM's alternative argument that Mr. Ahlborg should be precluded from testifying as a fact witness because he was compensated as an expert.  SMM is right that, by law, a fact witness is entitled to receive only $40 per day attendance fee and reimbursement of certain travel and subsistence expenses.  28 U.S.C. § 1821(b).  Courts preclude fact witnesses who were wrongfully compensated, Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n, 117 F.3d 1328, 1335 n.2 (11th Cir. 1997), but such a sanction is generally imposed when the improper payment was intentional and taints the testimony in a way that cannot be cured by cross examination.  Rocheux Int'l of N.J. v. U.S. Merchs. Fin. Grp., Inc., No. CIV. 06-6147, 2009 WL 3246837, at *4 (D.N.J. Oct. 5, 2009) (wrongful payment of putative expert for fact testimony casts a cloud over the legitimacy of that testimony, leaving preclusion as proper sanction).  I find that no intentional wrongful conduct – and certainly not bribery – was committed by Providence Piers in paying Mr. Ahlborg.  Rather, it appears that this was simply Mr. Ahlborg's usual fee to prepare a complex estimate.  If, despite my recommendation, he ends up testifying as a fact witness, the able trial judge assigned to this case can take appropriate steps to instruct the jury so as to minimize any confusion and prejudice based on the payment and the aura of expertise it confers.

IV.     **MOTION TO STRIKE RYAN REPORT**

A.     Facts Pertaining to Ryan Motion

On May 22, 2013, SMM's interrogatories were answered under oath by Dr. Conley with

a long list of knowledgeable witnesses.  ECF No. 121-5 at 2-5.  Among them was "Robert A.

Ryan, Valuations Concepts, Inc.," to testify regarding the "Appraised value of Property, pre- and

post-SMM operations."[12]  ECF No. 121-5 at 3.  When asked in document requests to supply both

of these appraisals, Providence Piers produced only an appraisal as of June 30, 2009 (two and a

half years pre-SMM), signed on April 10, 2013.  ECF No. 124-2 at 3-53.  No post-SMM

appraisal was provided.  Despite the lack of a post-SMM report, on its expert disclosure deadline

of August 22, 2014, SMM timely served rebuttal pre- and post-SMM appraisals.

On October 20, 2014, the day on which all expert discovery closed, SMM deposed Mr.

Ryan.  Two facts pertinent to this motion were elicited.  First, Mr. Ryan testified that his contact

about the engagement was with Dr. Conley, who told him that Providence Piers wanted to know

what the property was worth as of June 30, 2009, and as of 2013, but that the second appraisal

was never done because Dr. Conley specifically and personally directed Mr. Ryan not to do it:

"[Dr. Conley] just told me he didn't want to go any further after we had done the first one."  ECF

No. 124-4 at 7.  Second, Mr. Ryan testified that he had recently retired; as a result, his Rhode

Island license to perform appraisals had already expired on August 12, 2013, and his

Massachusetts license would soon expire on January 8, 2015.  ECF No. 124-4 at 4-5.

After he was no longer licensed as a real estate appraiser in Rhode Island or anywhere

else and almost eight months after the expert disclosure deadline, Mr. Ryan finally prepared the

Ryan Report, a "post-SMM" valuation of the Property.  Almost nine months after the expert

---

[12] While the interrogatory answer does not specify whether Mr. Ryan is a fact or expert witness, Providence Piers subsequently clarified, and SMM agreed, that he is an expert witness.  See ECF No. 124-5 at 2-3.

disclosure deadline, on March 10, 2015, the Ryan Report was served on SMM. In the report, he identifies himself simply as "Robert A. Ryan," associated with "Ryan Valuation Company" and describes his report as "an opinion of current market value," and not as an appraisal report; the report does not state that it is prepared in compliance with any uniform appraisal standards. ECF No. 124-6 at 3-4; ECF No. 124-6 at 31. In these respects, the Ryan Report differs from Mr. Ryan's pre-SMM appraisal report, prepared while Mr. Ryan was still a licensed appraiser and served well in advance of the expert disclosure deadline. ECF No. 124-2 at 4-5, 53 (appraisal prepared pursuant to "Uniform Standards of Professional Appraisal Practice" by Robert A. Ryan, "Certified General Appraiser," of "Valuations Concepts, Inc."). The Ryan pre-SMM appraisal opines that the Property's market value, on an "as is" basis as of June 30, 2009, is $3,800,000; the post-SMM Ryan Report, in reliance on the Ahlborg Report, concludes that the market value of the Property as of January 23, 2015, after deduction of the "cost to cure the structural deficiencies," is "zero ($0)." Compare ECF No. 124-2 at 52, with ECF No. 124-6 at 31.

B.    SMM's Motion

Like the Ahlborg motion, the motion to strike the Ryan Report is based on delay in that, almost nine months out of time, Providence Piers disclosed a brand new expert report from its real estate appraiser, Mr. Ryan. In addition to the timing of the disclosure, SMM grounds its motion to strike the new report on several other "remarkable" features. ECF No. 124-1 at 1. First, SMM has established that, aware that its diminution-in-value theory of damages needed a post-SMM valuation, Providence Piers nevertheless strategically directed its real estate expert not to prepare the report until long after the close of all discovery and particularly after SMM had disclosed its rebuttal diminution expert analyses. Second, the Ryan Report was prepared after Mr. Ryan's appraisal license expired so that he cannot legally opine to real estate value pursuant to applicable Rhode Island law. Third, Mr. Ryan's fair market value opinion – that the

Property has become worthless – is based on the now-withdrawn Ahlborg Report's opinion of the cost to demolish and rebuild with a deep foundation.  SMM asks that the Ryan Report be stricken because it violates Fed. R. Civ. P. 26(a) and the violation is neither substantially justified nor harmless.  Providence Piers defends the Ryan Report, arguing alternatively that (1) the delay was justified because the damage to the Property is ongoing and harmless in that no trial date has been set and Mr. Ryan was disclosed and deposed on his pre-SMM report; and (2) the Report is merely a Fed. R. Civ. P. 26(e) supplementation.  Providence Piers also argues that the Rhode Island statute has no impact on the substance of Mr. Ryan's opinion because it merely bars him from self-describing as a "certified appraiser," which he did not do.

C.    <u>Ryan Analysis</u>

I begin with the troubling sequence establishing that Mr. Ryan was ready, willing and able to prepare a timely report at a point well prior to his retirement and the surrender of his license, but he was deliberately and intentionally instructed by Dr. Conley, the principal of Providence Piers, a sophisticated real estate developer and investor, an experienced litigant and a practicing attorney,[13] not to do it.  This fact may be unfavorably (to Providence Piers) juxtaposed against Dr. Conley's May 22, 2013, signature on an interrogatory answer that permits the inaccurate inference that Mr. Ryan had prepared a post-SMM valuation.  ECF No. 121-5 at 3, 12. Dr. Conley then waited until after Mr. Ryan had been deposed, after Mr. Ryan was no longer certified, and, most importantly, after SMM had disclosed its rebuttal valuation reports, before returning to Mr. Ryan to ask him to finish the job.

Providence Piers tries to justify its intentional conduct by arguing that it was pointless to do a timely expert disclosure when an updated post-SMM valuation would still have to be done

---

[13] <u>See</u> ECF No. 103-10 at 5-6.

on the eve of trial in light of the evolving nature of the damage to the Property.  While such a concern raised before the close of expert discovery would certainly have led to an appropriate accommodation,[14] when raised now, after the deadline is long past, after Mr. Ryan has already been deposed (and confirmed he had been instructed not to do the post-SMM valuation) and after SMM was put to the cost of preparing its own pre-SMM and post-SMM rebuttal reports, it does not justify the delay, nor does it eliminate the obvious harm to SMM.[15]  Gagnon, 437 F.3d at 196 (when party realized problem with getting tests done by deadline, but took no action and let disclosure deadline pass without any attempt to obtain a second extension of time, delay not justified).  Further, the manipulation of a claimed supplementation so that it does not surface until after all deadlines are past cannot be excused by Fed. R. Civ. P. 26(e).  AVX Corp., 251 F.R.D. at 76 (supplementation served after close of expert and fact discovery precluded because "[s]upplementing the computation of damages . . . is not timely" under Rule 26(e)).

   Mr. Ryan's non-licensed status is also a big problem.  While Providence Piers argues airily that SMM may assume that the new report is conducted using the same "Uniform Standards of Professional Appraisal Practice" used to prepare the pre-SMM report even though it plainly does not say that it was, in fact, the report twists like a pretzel to present itself as an appraisal that is not an appraisal.  And the resulting valuation of the property – $0 – depends on the now withdrawn Ahlborg report.  The latter suggests the uncomfortable specter of

---

[14] For example, if Providence Piers had raised this concern before the expert disclosure deadline, the parties might have agreed to have a valuation done as of the expert discovery deadline, to be supplemented later, or to skip the interim report and do only one post-SMM valuation on the eve of trial.  Whatever might have happened, SMM would have been able to advocate for the approach that would be least prejudicial to it, with the Court as arbiter if the parties could not agree.

[15] In a somewhat disingenuous argument, Providence Piers posits that SMM not only has not been harmed, but should be blamed, for the timing of its compliant disclosure of its real estate rebuttal reports (on the Court-ordered deadline).  In effect, Providence Piers asserts that SMM should have ignored the Court-ordered deadline and delayed its rebuttal post-SMM valuation report and that its failure to do so renders its report irrelevant.

gamesmanship, committed by a sophisticated party, to achieve an inappropriate advantage.  See

Jones Creek Inv'rs, LLC v. Columbia Cty., No. CV 111-174, 2015 WL 1541409, at *8 (S.D. Ga.

Mar. 31, 2015) (litigant "cannot now evade [expert disclosure] requirements by aggregating

various experts' testimonies under one professed lay witness").

    In addition to the problem of an amorphous valuation that is not an appraisal and does not

rely on any appraisal standards, SMM also argues that a Rhode Island statute enacted in 2007,

R.I. Gen. Laws § 5-20.7-1, et seq., now bars Mr. Ryan from signing an expert real estate

valuation, which the Ryan Report plainly constitutes, or from testifying to his expert opinion of

real estate market value.  See ECF No. 124-6 at 3 (Ryan Report self-described as "opinion of

current market value for [Property]").  While no cases have addressed the issue, and the

operative statutory language is ambiguous,[16] the regulations propounded by the Department of

Business Regulation, the agency named by the General Assembly to enforce the statute, adopt an

interpretation that expressly prohibits any person from performing real estate appraisals without

a valid Rhode Island appraiser license or certification.  R.I. Code R. §§ 11-4-10:1(B), 11-4-10:6

(DBR Commercial Licensing Rule 10, §§ 1(B), 6).  These regulations specify that "the licensing

requirement applies to all opinions or analyses of real estate value or use, whether in the form of

a written appraisal, consultant's report, or expert testimony before a court."  Id. § 11-4-10:1(B)

(DBR Commercial Licensing Rule 10, § 1(B)).  When such an interpretation is adopted by the

administrative agency empowered by the General Assembly to enforce a statute, a court

---

[16] Providence Piers is right that R.I. Gen. Laws § 5-20.7-3(a) states, "[n]o person, other than persons certified . . . shall assume or use that title," and could be interpreted to mean that non-certified appraisers may freely opine to appraisals as long as the term "certified" is not used.  Inconsistently, R.I. Gen. Laws § 5-20.7-3(b) states that "[t]his chapter precludes any person who is not certified . . . from appraising real property for compensation under chapter 20.5 [real estate brokers]."  The statute delegates the adoption of implementing regulations to the Department of Business Regulation ("DBR").  R.I. Gen. Laws § 5-20.7-6(a)(6).  The resulting regulations eliminate the ambiguity: "[n]o person shall provide an analysis, opinion, or conclusion that relates to the nature, quality, value or utility of identified real estate as a consultant, expert witness, or otherwise, unless duly licensed or certified . . . ."  R.I. Code R. § 11-4-10:6 (DBR Commercial Licensing Rule 10, § 6).

reviewing the agency's interpretation of the statute must accord that interpretation "weight and deference as long as that construction is not clearly erroneous or unauthorized." Labor Ready NE., Inc. v. McConaghy, 849 A.2d 340, 344 (R.I. 2004); see also Town of Burrillville v. Pascoag Apartment Assocs., LLC, 950 A.2d 435, 445-46 (R.I. 2008).  And the statute itself unambiguously prohibits evasion of the licensing requirement by the claim, as Providence Piers has asserted, that a valuation is not an appraisal.  R.I. Gen. Laws § 5-20.7-2(1) (broadly defining "appraisal" as "an analysis, opinion, or conclusion relating to the nature, quality, value or utility of specified interests in, or aspects of, identified real estate").  I do not find that the interpretation adopted by these regulations is erroneous or unauthorized.  Accordingly, I am compelled to find that Mr. Ryan is not competent to opine to the valuation in the Ryan Report.  See Fed. R. Evid. 601 (state law governs witness competency on claim when state law supplies the rule of decision); Mann v. United States, No. CV-11-8018-PCT-LOA, 2012 WL 273690, at *10 (D. Ariz. Jan. 31, 2012) (witness incompetent to testify under state law cannot testify as expert witness in diversity cases).

Invoking the law of the case, SMM contends that there is no need to look further than the holding of Providence Piers II denying Providence Piers' motion to extend the discovery deadlines.  This over reads Providence Piers II – while the Ryan Report is unquestionably noncompliant with the expert disclosure deadline, that is far from enough to send it down the slippery slope to preclusion.  Providence Piers I, at *5 (whether Fed. R. Civ. P. 26(a)(2) noncompliance results in preclusion requires examination of justification for delay, harm caused by delay and "multiplicity of pertinent factors" in Esposito).  Here, however, it is plain that the delay inflicted harm and that, far from being justified, is the product of intentional misconduct and gamesmanship by a sophisticated party.  And then there is the impediment of Mr. Ryan's

competency to present such an opinion under Rhode Island law.  Providence Piers deliberately chose an appraiser no longer legally able to act as an expert regarding a real estate valuation opinion and now must bear the consequences.  I recommend that the Ryan Report be stricken.

## V.     CONCLUSION

For the foregoing reasons, I recommend that SMM's motions to strike Glenn Ahlborg as a fact witness and SMM's motion to strike the January 23, 2015, expert report prepared by Robert A. Ryan should both be granted.  ECF Nos. 121, 124.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 1, 2015