UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PROVIDENCE PIERS, LLC,          :
        Plaintiff,              :
                               :
        v.                         :        C.A. No. 12-532S
                               :
SMM NEW ENGLAND, INC.,     :
        Defendant.         :

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

      This case juxtaposes neighbors that own adjoining land on the industrial-zoned Providence waterfront; Plaintiff Providence Piers, LLC, ("Providence Piers") claims that the scrap operations of SMM New England, Inc. ("SMM") have caused contaminated particulates to migrate onto its property, catastrophically damaging its restored historic building and contiguous outbuildings. Before the Court for report and recommendation (28 U.S.C. § 636(b)(1)(B)) is Defendant SMM's motion to strike the second report of Providence Piers' expert, Robert Tuomanen ("Tuomanen Report II"). ECF No. 133. This is the seventh motion[1] this Court has entertained arising from the parties' disputes regarding Providence Piers' Fed. R. Civ. P. 26(a)(2)

---

[1] Since the close of expert discovery on October 20, 2014, the parties have litigated the issue of compliance with their Rule 26(a)(2) obligations to file timely and compliant expert reports, resulting in the following rulings:

    1.  ECF No. 96 (Nov. 6, 2014) (memorandum and order ["M+O"] holding failure of Providence Piers to make timely Rule 26(a)(2)(B)-compliant expert disclosure of engineering expert, George J. Geisser, neither substantially justified nor harmless; because preclusion overly harsh, Providence Piers given leave to supplement but required to pay sanction), (2014 WL 5775663 (D.R.I. Nov. 6, 2014)).

    2.  ECF No. 113 (Apr. 29, 2015) (M+O holding motion for six-month extension of expert disclosure deadline denied because Providence Piers failed to sustain burden of showing excusable neglect).

    3.  ECF No. 120 (May 13, 2015) (M+O holding Providence Piers' motion for limited re-opening of expert deadline to take new dust samples granted based on changed conditions).

    4.  ECF No. 129 (June 24, 2015) (report and recommendation ["R+R"] recommending grant of SMM's motion to award sanctions related to non-compliant Geisser report), adopted, ECF No. 130, (2015 WL 4459143 (D.R.I. July 20, 2015)).

5-6. ECF No. 132 (Oct. 1, 2015) (R+R recommending grant of motions to strike Glenn Ahlborg as a fact witness and Robert A. Ryan's second expert report), adopted, ECF No. 150, (2016 WL 126742 (D.R.I. Jan. 11, 2016)).

compliance with requirements to make timely and compliant expert disclosures.  SMM

challenges Providence Piers' purported supplementation of the first report of its soil expert,

Robert W. Tuomanen, of Occupational Health & Safety, with Tuomanen Report II (ECF No.

133-5), arguing that the new report impermissibly adds new opinions and is at variance with this

Court's report and recommendation of May 13, 2015.  ECF No. 120 ("May 13, 2015 R+R").

Because it contends that this noncompliance is neither substantially justified nor harmless, SMM

contends that Tuomanen Report II should be stricken.

I.    **BACKGROUND**

Mr. Tuomanen's first report was timely disclosed on January 27, 2014.  ECF No. 133-2.

("Tuomanen Report I").  Prepared "for the purpose of sampling metals in dust and soil" and in

reliance on emission spectroscopy performed at a Massachusetts laboratory to identify the metal

content, Tuomanen Report I compares the metal content of soil samples taken from the dust and

soil in and around SMM's scrap metal piles with dust taken from Providence Piers' roof and

inside its buildings.  ECF No. 133-2 at 3.  Based on arithmetic average metal concentrations and

on comparator soil data drawn from "literature," such as studies of a pitch pine forest and

unspecified urban gardens, he concluded that contaminated metal particulate was being carried

from SMM's operations onto and over Providence Piers' building.  ECF No. 133-2 at 5-6, 7, 12,

16, 18.

On the appropriate deadline, SMM's soil expert, Donna Pallister of Arcadis (ECF No.

133-4) rebutted Tuomanen Report I with the Pallister Report.  ECF No. 133-4.  The Pallister

Report uses the same method (comparison of averages) used in Tuomanen Report I, but

compared the metals found in the SMM soil and the Providence Piers dust with actual

Providence samples that she collected from various locations, rather than with the hypothetical

urban soil data drawn from "literature" used by Mr. Tuomanen.  She concluded that all three sources are substantially similar and that the differences are unrelated to dust migration from SMM's operation to Providence Piers' land.  Based on this conclusion, she opined that both the SMM and the Providence Piers samples are consistent with the background Providence urban soil and that the results do not support the conclusion that SMM's scrap metal operation is contaminating Providence Piers' land.  ECF No. 133-4 at 11-14.  In October 2014, Mr. Tuomanen was deposed; he candidly acknowledged that the Pallister Report's use of site-specific soil samples as comparators is preferable, but he "didn't get any" nor did he consult any of various published local soil composition data.  ECF No. 133-3 at 12, 15, 16 (Tuomanen Depo. at 133, 153, 155).  Based on these and other flaws, SMM has labeled Tuomanen Report I as "junk science," vulnerable to being stricken pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

In March 2015, Providence Piers asked for leave of Court to return to SMM's property to take and test new soil samples from beneath the shredded pile and scrap piles, as well as water samples from the scrap pile.  Three changed conditions formed the basis for the Court's decision to permit new sampling of the shredded pile, but to deny the other relief sought: first, the source of the shredded pile had changed, creating the potential that there has also been a change in its content; second, SMM had introduced its "Big Gun Misters" to prevent the migration of dust onto Providence Piers' property, the success of which was unknown with respect to the shredded pile; and, third, Providence Piers claimed that the size and position of the pile of shredded material had changed in that it had become much larger and had been moved from the opposite side to the portion of SMM's property immediately adjacent to Providence Piers' land.  ECF No. 120 at 2-4.  The Court's ruling allowed Providence Piers to make a supplemental expert

disclosure based on new samples taken from the shredded pile.  The resulting order specifically contemplated that Providence Piers would test for materials other than just metals.[2]  However, the ruling did not allow Providence Piers an opportunity for a do-over; that is, Providence Piers was not given leave to resample the scrap metal piles and rewrite Toumanen Report I, using Pallister's data and a different analytical framework to cure the deficiencies identified during Mr. Tuomanen's deposition.

On June 8, 2015, Mr. Tuomanen returned to SMM's land and took four new samples, not just from the shredded pile, but also from the scrap pile, which he used to prepare Tuomanen Report II, a report in two parts signed on August 25, 2015.  ECF No. 133-5.

In the first part of the Tuomanen Report II, using site-specific soil data that he lifted from the Pallister Report, and abandoning his analytical method (comparison of averages) in favor of a more sophisticated statistical analysis, Mr. Tuomanen concludes that his opinions from Tuomanen Report I remain sound in that contaminated particulates continue to be carried from the scrap pile on SMM's property to Providence Piers' property, despite SMM's use of various methods to prevent dust migration.  ECF No. 133-5 at 4.  This portion of the report is quintessential rebuttal to the Pallister Report; it essentially analyzes analogous data using a different methodology to reach a different conclusion from hers.  Moreover, the only new aspects[3] of this portion of Tuomanen Report II are the use of site-specific Providence soil

---

[2] Unlike the scrap piles that are composed exclusively of metals, the shredded pile is comprised of shredded automobile material, which Providence Piers asserts, and SMM denies, may include non-metallic waste colloquially referred to as "auto fluff."  See ECF No. 110-4 at 1-2 (Huling Aff. ¶¶ 4-6); ECF No. 137 at 3 n.1.

[3] Providence Piers argues that the use of the 2015 samples from Providence Piers and SMM is also new so that this portion of Tuomanen Report II is simply the necessary supplementation required in a case involving a claim of continuing trespass.  The argument is beside the point – as SMM points out, if Mr. Tuomanen had simply updated his initial metallic content analysis using the 2015 scrap samples, the scrap pile sampling might have been beyond what was permitted by the May 13, 2015 R+R, but the resulting report would amount to a true supplementation.  See ECF No. 133-1 at 2.  However, that is not what he did.

samples and a statistical analytical method, both of which could readily have been used at the outset and incorporated in Tuomanen Report I.

The second part of Tuomanen Report II is new; focused on the shredded pile samples, it relies on a "morphology analysis," derived from the use of Scanning Electron Microscopy done at a California laboratory. This part of Tuomanen Report II concludes that the shredded pile contains auto fluff, which has contaminated Providence Piers' property. ECF No. 133-5 at 9-12, 14. It appears to be well within the scope of the supplementation contemplated by the May 13, 2015 R+R.

## II.   APPLICABLE LAW

The requirement to make timely disclosure of new expert witnesses and their reports is set out in Fed. R. Civ. P. 26(a)(2). The consequence of noncompliance is governed by Fed. R. Civ. P. 37(c)(1), which provides that a party that "fails to . . . identify a witness as required by Rule 26(a) . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." See Pena-Crespo v. Puerto Rico, 408 F.3d 10, 13 (1st Cir. 2005) ("[E]xclusion of evidence is a standard sanction for a violation of the duty of disclosure under Rule 26(a)."). While Fed. R. Civ. P. 26(e) permits supplementation of a timely expert disclosure under limited circumstances, including pursuant to an order of the court, Fed. R. Civ. P. 26(e)(1)(B), if a party discloses a "supplemental" expert report that includes new methodologies, tests and opinions, attempts to correct deficiencies or omissions in its original report, or otherwise seeks to bolster the conclusions contained its original report, the report is not actually a supplement. Jones Creek Investors, LLC v. Columbia Cnty., Ga., No. CV 111-174, 2015 WL 1541409, at *8 (S.D. Ga. Mar. 31, 2015); 3M Innovative Props. Co. v. Dupont Dow Elastomers, LLC, No. CIV. 03-

3364MJDJGL, 2005 WL 6007042, at *5 (D. Minn. Aug. 29, 2005).  Such a report is treated as

an untimely expert disclosure subject to preclusion or an alternative sanction pursuant to Fed. R.

Civ. P. 37(c)(1).  Palmer v. Asarco Inc., No. 03-CV-0498-CVE-PJC, 2007 WL 2254343, at *2-3

(N.D. Okla. Aug. 3, 2007).

　　　　Courts determining whether a report is a proper supplementation or an untimely

disclosure focus on the well-settled principle that an expert may not "fix" analytical or

methodological flaws in its expert's original report by way of a supposed "supplement."  See,

e.g., Estate of Cape v. United States, No. 11-C-0357, 2013 WL 4522933, at *5 (E.D. Wis. Aug.

27, 2013) ("[S]upplementation is not properly used to remedy defects in an expert's report or

testimony after the weaknesses have been revealed."); United States v. 14.3 Acres of Land, No.

07CV886-AJB NLS, 2011 WL 2414348, at *4 (S.D. Cal. June 10, 2011) ( "party may not rely on

Rule 26(e)(1) as a way to remedy a deficient expert report or as a means of getting in, in effect, a

brand new report.") (citations omitted); In re Ready-Mixed Concrete Antitrust Litig., 261 F.R.D.

154, 159 (S.D. Ind. 2009) (rules do not countenance expert do-overs based on the criticisms of

opposing parties or differing approaches of opposing experts).  3M Innovative Props., 2005 WL

6007042, at *3-5 (same).  The operative question is whether the expert could have performed the

new tests at the outset.  Palmer v. Asarco Inc., No. 03-CV-0498-CVE-PJC, 2007 WL 2254343,

at *2-4 (N.D. Okla. Aug. 3, 2007).

　　　　In Palmer, an environmental expert who initially used general models of lead migration

responded to a Daubert challenge with a supplemental expert affidavit that abandoned the

general models in favor of site-specific modeling.  2007 WL 2254343, at *2.  In striking the

affidavit, the court rejected the plaintiffs' attempt to characterize the new test results as a Fed. R.

Civ. P. 26(e) supplementation, noting that the expert "could have performed the same modeling

in a timely fashion" and that such an attempt to strengthen the original opinions "exceeds the bounds of permissible supplementation and is subject to exclusion under Rule 37(c)(1)." <u>Id.</u> at *3-4.  In a cautionary note that resonates in the context of this case, the <u>Palmer</u> court held:

> To rule otherwise would create a system where preliminary [expert] reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given.  This result would be the antithesis of the full expert disclosure requirements stated in Rule 26(a).

<u>Id.</u> at *3-4 (internal citations omitted).

Once the court finds that an untimely disclosed expert report is not a proper supplementation, it must turn to Fed. R. Civ. P. 37(c)(1); at that point, the party facing preclusion has the burden of proving substantial justification or harmlessness.  <u>Wilson v. Bradlees of New England, Inc.</u>, 250 F.3d 10, 21 (1st Cir. 2001).  Substantial justification means justified in substance or in the main, to a degree that could satisfy a reasonable person.  <u>JJI Int'l, Inc. v. Bazar Grp., Inc.</u>, No. 11-206ML, 2013 WL 3071299, at *5 (D.R.I. Apr. 8, 2013) (action is substantially justified if there is a "genuine dispute" or "if reasonable people could differ as to the appropriateness of the contested action").  Harmlessness arises from the infliction of additional expenses on the opposing party as well as the derailment of the court's scheduling order.  <u>See</u> <u>Providence Piers, LLC</u>, 2014 WL 5775663, at *4-5 (harmlessness is fairly limited concept and incurring additional cost is prejudicial); <u>Vigilant Ins. v. E. Greenwich Oil Co.</u>, 234 F.R.D. 20, 24 (D.R.I. 2006) (failure timely to disclose experts is prejudicial because opposing party could have taken countermeasures, including holding depositions and retaining experts of its own).

Although the baseline sanction called for by Fed. R. Civ. P. 37(c)(1) is preclusion, even when a party "has not shouldered its burden on either preclusion escape hatch, . . . preclusion is

not a strictly mechanical exercise, and this Court has discretion to choose a less severe sanction."

Providence Piers, LLC, 2014 WL 5775663, at *3-4; Vigilant Ins., 234 F.R.D. at 24. In selecting

the appropriate sanction, courts consider "a multiplicity of pertinent factors, including [1] the

history of the litigation, [2] the proponent's need for the challenged evidence, [3] the justification

(if any) for the late disclosure . . . [4] the opponent's ability to overcome its adverse effects,

including [s]urprise and prejudice . . . [and 5] what the [incomplete] disclosure portends for the

court's docket." Samaan v. St. Joseph's Hosp., 670 F.3d 21, 36-37 (1st Cir. 2012); Esposito v.

Home Depot U.S.A., Inc., 590 F.3d 72, 78 (1st Cir. 2009); Providence Piers, LLC, 2014 WL

5775663, at *4. Thus, when the proffered evidence is central to the plaintiff's claim, a rebuttal

report that improperly includes an analysis that could have been done in the initial report should

not be precluded as long as the trial date has not yet been set and a monetary sanction can be

assessed to compensate defendants for the additional costs required to meet the new expert

testimony. Barnett v. Conn. Light & Power Co., No. 3:11-CV-1037 VLB, 2013 WL 1196669, at

*2 (D. Conn. Mar. 25, 2013).

## III. ANALYSIS

Through the fog stirred up by the expert kerfuffle in this case has plainly emerged the

reality that Providence Piers' approach to its Fed. R. Civ. P. 26(a)(2) initial expert disclosure

deadline was sloppy and inconsistent with the letter and spirit of the rule. As the latest chapter,

this motion poses what has become a familiar dilemma for the Court – whether to permit

Providence Piers to cure an initial report whose author cut corners, thereby inflicting even more

prejudice on SMM. While the portion of Tuomanen Report II that is based on the morphology

analysis of the shredded pile is plainly within the scope of what Providence Piers was permitted

to do when it was given leave to supplement by the Court's May 13, 2015 R+R, the remaining

opinions in Tuomanen Report II were developed using Pallister's site-specific soil data and an alternative analytical method to fix the glaring deficiencies exposed in Tuomanen Report I and to rebut the Pallister Report, all of which is plainly outside the scope of the Court's May 13, 2015 R+R.

There can be little doubt that evidence that SMM's operation has caused the migration of toxic material onto Providence Piers' land is central to the very heart of Providence Piers' case. Striking Tuomanen Report II will leave Providence Piers only with Tuomanen Report I, which is likely to be the victim of a <u>Daubert</u> motion since even its author agrees that it is flawed. Following this course would likely end in a determination of this aspect of Providence Piers' claim, not on the merits, but rather based on procedural irregularities, a path that courts are properly loath to travel down. <u>See</u> <u>Providence Piers, LLC</u>, 2014 WL 5775663, at *4-5.

As with Providence Piers' other expert inadequacies, this back-door rebuttal is neither substantially justified nor harmless. <u>See</u> <u>id.</u> at *3. Indeed, Providence Piers does not attempt to justify the blatant rebuttal, arguing instead (wrongly) that all of Tuomanen Report II is within the scope of the May 13, 2015 R+R. SMM's need to prepare of do-over of the Pallister Report supplies the harm. <u>See</u> <u>id.</u> at *4 (citing <u>Genereux v. Raytheon Co.</u>, 754 F.3d 51, 60 (1st Cir. 2014) (need to redo discovery harms opposing party)). Nevertheless, in this instance, the harm is somewhat mitigated by Providence Piers' partial compliance with the May 13, 2015 R+R, in that SMM has already requested and been granted leave to rebut any portions of Tuomanen Report II that survive this motion. Accordingly, some delay and additional expense is already inevitable based on the changed circumstances that formed the foundation for the May 13, 2015 R+R. <u>See</u> ECF No. 134; Text Order of Oct. 23, 2015. Moreover, consideration of the prior history of this litigation to determine whether the conduct at issue appears to amount to a pattern of malice or

bad faith now seems to cut both ways.  On one hand, the expansive Tuomanen Report II appears

to be yet another intentional and strategic end-run around the consequences of the inadequacy of

Tuomanen Report I, which, coupled with other instances that the Court has labeled as

"gamesmanship," ECF No. 113 at 18; ECF No. 132 at 20, 27, tips the scales towards preclusion.

On the other hand, Providence Piers' basic sin was its failure to take the original disclosure

deadline seriously; for that, it has already paid a heavy price.[4]  See ECF No. 113 (motion to

extend expert discovery denied); ECF No. 150 (motion to preclude Ahlborg and Ryan granted).

Accordingly, a sanction that focuses on eliminating the prejudice to SMM seems more apt.

Based on the foregoing, I recommend a Solomonic solution.  Providence Piers may

choose: either (1) the portion of Tuomanen Report II that is based on scrap metal testing in

rebuttal to the Pallister Report is stricken (specifically, all parts of Tuomanen Report II that do

not relate to the morphology analysis of the shredded pile); or (2) Providence Piers must pay a

sanction[5] amounting to the entire cost of the Pallister Report (which will have to be done over)

and half of SMM's reasonable attorney's fees associated with the bringing of this motion.[6]

Providence Piers must advise SMM which option it chooses within fourteen days of the adoption

of this report and recommendation or by whatever other date may be set by the district court.

SMM must submit to Providence Piers within fourteen days thereafter, a demand for a specific

---

[4] This approach should not be read as a signal that more new reports that fail to comply with the letter and spirit of Fed. R. Civ. P. 26(a)(2) will be treated with similar leniency.

[5] During an earlier battle of the expert wars in this case, the Court questioned the effectiveness of a monetary sanction not only because such a sanction had failed to deter the late disclosure of additional experts, but also because of the effort SMM had to expend to get it paid.  ECF No. 132 at 21 & n.9.  Since then, the Court has been advised that Providence Piers paid the first sanction.  Providence Piers is cautioned that its initial lackadaisical attitude towards payment of the first sanction will not be tolerated again.

[6] I do not recommend that this Court include the costs of deposing Mr. Tuomanen as part of the sanction.  The taking of that testimony was not a wasted effort, in that it resulted in his admissions regarding the deficiencies in his first report, which can and doubtless will be used if there is a Daubert challenge to Mr. Tuomanen's work, as well as in connection with his cross examination.

monetary sum, with supporting documentation sufficient for Providence Piers to assess whether

to challenge the amount demanded.  If it chooses to retain Tuomanen Report II, Providence Piers

must pay the sanction within thirty days of its receipt of demand.  Further, while SMM's rebuttal

report may be disclosed at any time, the deadline for its rebuttal report is either thirty days after

Providence Piers advises that it has opted to permit the scrap pile portion of Tuomanen Report II

to be stricken or a reasonable time after Providence Piers pays the sanction that permits the entire

Tuomanen Report II to stand.[7]

## IV.    CONCLUSION

In conclusion, I recommend that this Court grant in part and deny in part Defendant

SMM New England Corporation's Motion to Strike the August 25, 2015, Report of Plaintiff's

Expert, Robert Tuomanen (ECF No. 133); unless Providence Piers pays the recommended

sanction, the motion to strike the portion of Tuomanen Report II that amounts to an improper

rebuttal should be granted, while the motion to strike the portion of the Report that constitutes a

morphology analysis of the shredded pile should be denied.

Any objection to this report and recommendation must be specific and must be served

and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting

party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a

timely manner constitutes waiver of the right to review by the district judge and the right to

appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008);

Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

---

[7] SMM has already procured thirty days to prepare its rebuttal.  Text Order of Oct. 23, 2015.  If Ms. Pallister is redoing her original report in its entirety, more time may be required, which will be granted upon request, as long as what is sought is reasonable.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 2, 2016